UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| ORIGIN FOOD GROUP, LLC, | ) | Case No. 25-50268 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## NOTICE OF HEARING

**TAKE NOTICE** that the debtor, ORIGIN FOOD GROUP, LLC, has filed a *Motion For Approval Of Auction Marketing Agreement And to Sell Free And Clear Of Any Interests In Property*. A copy is included with this notice or copied on the reverse side of this notice.

**Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

**TAKE FURTHER NOTICE** that a hearing on the motion will be held on **March 6, 2026 at 11:00 AM** before the Honorable Laura T. Beyer in the United States Bankruptcy Court, 200 W. Broad Street, Statesville, NC 28677. Any response, including any objection, to the relief requested should be filed with the Clerk, United States Bankruptcy Court for the Western District of North Carolina, 401 W. Trade Street, Suite 2500, Charlotte, NC 28202. Any response should clearly identify the specific motion to which the response is directed and should comply with Local Rule 9013(1). A copy of any response should be served upon the following:

John C. Woodman, 1701 South Boulevard, Charlotte, NC 28203 (fax: 704-372-1357)

U.S. Bankruptcy Administrator, 401 W. Trade Street, Suite 2400, Charlotte, NC 28202 (fax: 704-344-6666)

**TAKE FURTHER NOTICE** that the Court may grant the relief requested at the hearing. No further notice will be given.

Dated: Charlotte, North Carolina
February 12, 2026.

/s/ *John C. Woodman*
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax: (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| In re: ) | Case No. 25-50268 |
| ) | |
| ORIGIN FOOD GROUP, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

## MOTION FOR APPROVAL OF AUCTION MARKETING AGREEMENT AND TO SELL FREE AND CLEAR OF ANY INTERESTS IN PROPERTY

**NOW COMES** ORIGIN FOOD GROUP, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), and hereby requests the Court enter an order permitting the Debtor to liquidate certain assets via online public auction pursuant to section 105, 363 and Bankruptcy Rule 6004. In support of the relief requested, the Debtor states as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f) and 363(m) of Title 11 of the United States Code (the "Bankruptcy Code"), and Bankruptcy Rule 6004.

### BACKGROUND

2. Debtor is a food co-packing company based out of Statesville, North Carolina that historically focused on ice cream and recently ventured into yogurt. Origin's food packaging and production services are provided at a single facility located in Statesville, North Carolina.

3. The Debtor filed chapter 11 bankruptcy on August 20, 2025 ("Petition Date"), before the United States Bankruptcy Court for the Western District of North Carolina ("Court").

1

4. The history of the Debtor and the disputes that led to this chapter 11 filing is well documented throughout this case. In sum, as of the Petition Date, the Debtor was in possession of certain equipment including a UF4 Loop. However, pursuant to the Debtor's settlement with Icelandic Provisions, Inc. ("Icelandic"), the Debtor received $1,375,000.00 million from Icelandic in exchange for the equipment that was in dispute.

5. The Debtor filed its *Motion to Approve Settlement* on September 12, 2025 [AP Doc. No.[1] 41] which was approved by this Court via the *Order Approving Settlement* on September 22, 2025 [AP Doc. No. 50]

6. Following the Settlement, the Debtor has evaluated which equipment is necessary for future operations leaving certain nonessential food and dairy equipment which it seeks to sell pursuant to section 363 of the Bankruptcy Code.

7. This Court has approved the retention of Harry Davis, LLC as its authorized auctioneer. See *Amended Ex Parte Order Granting Application to Employ Professional Harry Davis, LLC as Auctioneer* [Doc. No. 166].

8. Attached to the *Ex Parte Application by Debtor to Employ Harry Davis, LLC as Auctioneer* was that certain *Auctioneer Engagement Agreement* (the "Agreement"). Attached hereto as Exhibit A is a true and accurate copy of the Agreement, which is incorporated by reference as if fully set forth herein.

*Assets and Auction*

9. The Assets in which the Debtor holds title to and seeks to sell pursuant to this Motion are provided for on the attached *Asset Schedule* which is incorporated by reference as if fully set forth herein as Exhibit B (the "Assets").

10. The Debtor proposes to sell the Assets in the marketplace through an online

---

[1] AP Doc. No. shall refer to that certain Adversary Proceeding entitled *Icelandic Provisions, Inc. v. Origin Food Group, LLC*, Adv. Pro. No. 25-05013.

2

auction and bidding process to ensure that the Debtor's estate realizes the maximum value for the Assets.

11. The Debtor, through its auctioneer, seeks to solicit the Assets during a 6-week marketing period from authorization to proceed. Following the marketing period, the auction will go live for 72 hours with Asset lots closing beginning at 12 PM local time on the final day of the Auction.

12. Following the conclusion of any prevailing offer made during the online auction, the Debtor seeks to be authorized and directed to take all commercially reasonable and necessary steps to complete and implement the transaction(s) contemplated by the sale, including (but not limited to) conveying the pertinent Asset to the party submitting the prevailing bid by bill of sale, sale invoices, or other appropriate instrument. The Debtor shall be deemed to have accepted a bid only when payment is made following delivery of the sale invoice.

13. Upon completion of the auction process, the Debtor will file the required Report of Sale as to all assets sold. Thereafter, within thirty (30) days of the Report of Sale being filed, the Debtor will file a Motion for Status Conference to update the Court as to the sale results.

*Auction Fees and Costs*

14. Harry Davis, LLC has agreed to pay without reimbursement from the Debtor for all marketing expenses associated with promoting the auction and all labor and all other expenses to prepare for and conduct the auction.

15. The proposed compensation to Harry Davis, LLC is a buyer's premium as defined in Section 9 of the Agreement of the industry standard of 17% of the purchase price which is paid by the buyers and a commission of 10% for each item sold to be retained from the sale proceeds. Buyers are to pay a 3% buyer's premium for the internet provider to be collected by Harry Davis, LLC and remitted to the internet provider.

3

16. Through this Motion, on the fee structure provided for in the Agreement and outlined above, the Debtor seeks to compensate Harry Davis, LLC without further application of the Court.

*Secured Claims*

17. Below is a schedule of the UCC Financing Statements on file with the North Carolina Secretary of State in which the Debtor is listed:

| CREDITOR | UCC NUMBER | DATE FILED |
|---|---|---|
| Branch Banking & Trust | 20110009486B<br>*Termination 20160001564G* | Feb. 1, 2011 |
| International Financial Services Corporation | 20160052751M<br>*Termination 20250038950F* | May 24, 2016 |
| Longitude 80 Dairies, Inc. | 20200025098K<br>*Continuation* 20250025324G<br>*Assignment* 20250038887E<br>Treemount Holding, LP | March 9, 2020 |
| Treemount Trading Limited | 20200025099M<br>*Continuation* 20250025341F | March 9, 2020 |
| HYG Financial Services, Inc. | 20200026678E | March 12, 2020 |
| Branch Banking & Trust | 20200120730J | August 4, 2020 |
| CT Corporation System | 20200123561C<br>*Termination 20240041114M* | August 10, 2020 |
| Navitas Credit Corp. | 20210083097C | June 22, 2021 |
| DariFill | 20210142723F | Oct. 22, 2021 |
| The Huntington National Bank | 20220056104C | April 22, 2022 |
| The Huntington National Bank | 20230060847C | May 12, 2023 |
| CT Corporation System | 20230061633H<br>*Assignment* 20230075449H<br>First Commonwealth Equipment Finance, a division of First Commonwealth Bank | May 15, 2023 |
| CT Corporation System | 20230069458M<br>*Termination 20240032110G* | June 1, 2023 |
| CT Corporation System | 20230154856H<br>*Assignment* 20240023544H<br>First Commonwealth | Dec. 20, 2023 |

4

| | Equipment Finance, a division of First Commonwealth Bank | |
|---|---|---|
| Goodman Capital Finance | 20240039794A | April 3, 2024 |
| Luthman Backlund Foods USA, Inc. | 20240044193M<br>*Termination 20250074762G* | April 11, 2024 |
| First Citizens Bank & Trust | 20240082595J | July 9, 2024 |
| CT Corporation System | 20240082601G<br>*Termination 20250075204J* | July 9, 2024 |
| DariFill | 20240109255A | Sep. 10, 2024 |

(collectively, the "Creditors".)

18. The Debtor reserves the right to challenge the perfection of any liens at a later date including the liens allegedly perfected by the Creditors.

19. However, for purposes of this Motion, the Debtor seeks that any liens that existed as of the Petition Date attach, with the same priority, to the proceeds of any completed sale thereby giving the Creditors replacement liens on the Assets to the extent that a lien existed.

**RELIEF REQUESTED**

Pursuant to this Motion, the Debtor requests the following relief: (i) authorization to sell the Assets pursuant to the Auction Marketing Agreement free and clear of liens, claims, interests, and encumbrances with any liens, claims, interests, and encumbrances attaching to the net proceeds of the sale to the same extent and priority as the same existed on the Petition Date; (ii) that any party submitting the prevailing bid on a particular Assets be afforded the protections of section 363(m) of the Bankruptcy Code; (iii) that the Court waive any stay that would otherwise apply pursuant to Bankruptcy Rule 6004(h), and (iv) that the Court approve the surcharge of the sale proceeds for the Debtor's costs of sale of the Assets.

## BASIS FOR RELIEF REQUESTED

20. The Debtor, in its sound business judgment, asserts that liquidating the Assets pursuant to the Auction Marketing Agreement will yield the highest net return to the bankruptcy estate.

21. Section 363(f)(2) of the Bankruptcy Code permits the sale of estate property free and clear of any interest in such property by consent of the party claiming an interest in the property.

22. "In determining whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test." 3 COLLIER ON BANKRUPTCY ¶ 363.02 (16th 2019).

23. Courts look to various factors to determine whether a sound business justification exists, including: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (setting forth the "sound business purpose" test); *accord In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification test of *In re Lionel Corp.* standard and adding the "good faith" requirement); *In re Charlotte Commercial Group, Inc.*, 2002 WL 31055241, *3 (Bankr. M.D.N.C. Aug. 12, 2002) (unreported decision by Judge Aron adopting *Lionel* in the Middle District of North Carolina).

24. Waiver of the stay provided for under Bankruptcy Rule 6004(h) is also warranted so that this beneficial sale may proceed as quickly as possible thereby reducing administrative costs.

25. Under section 506(c) of the Bankruptcy Code, a debtor-in-possession "may recover from property securing an allowed claims the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim."

26. The prime purpose of section 506(c) is "to prevent a secured creditor from gaining a windfall at the expense of the estate." *Loudoun Leasing Development Co. v. Ford Motor Credit Co. (in re K & L Lakeland, Inc.)*, 128 F.3d 203 (4th Cir. 1997) *(internal citations omitted)*.

27. A claimant seeking to have its fees surcharged under section 506(c) must show: "(i) the expenditure was necessary, (ii) the amounts expended were reasonable, and (iii) the expenditure conferred a direct benefit on the secured creditor." *Id.*

28. The fees incurred by this estate, including the costs associated with the Auction, should be surcharged under section 506(c), as the alternative of no sale would most likely realize no recovery for the Creditors.

29. Here, sound business justification exists as to the sale of the Assets as the Debtor has identified the Assets as equipment that it does not need for future operations.

30. A sound business reason exists for the proposed sale in that selling the Assets, rather than storing assets that may not have utility for the Debtor, ensures the greatest return for the estate while reducing ongoing administrative costs.

31. The public auction of the Assets will ensure that the sales will be conducted in a fair, open, and competitive manner, and on a level playing field. Any resulting transactions are in good faith and at arm's length. Accordingly, any party submitting the prevailing bid on a particular Assets should be considered to have acted in good faith and is entitled to the protections of section 363(m) of the Bankruptcy Code.

7

32. Due to the vast number of Creditors, the Debtor asserts that section 363(f)(4) is satisfied such that the Assets may be sold free and clear of the alleged liens of the Creditors with any liens of the same attaching to the proceeds of the sale.

33. The fees incurred by this estate, including the costs associated with the Auction, should be surcharged under section 506(c), as the alternative of no sale would most likely realize no recovery for the Creditors.

**WHEREFORE**, the Debtor requests that this Court issue an order (i) authorization to sell the Assets pursuant to the Auction Marketing Agreement free and clear of liens, claims, interests, and encumbrances with any liens, claims, interests, and encumbrances attaching to the net proceeds of the sale to the same extent and priority as the same existed on the Petition Date; (ii) that any party submitting the prevailing bid on particular Assets and payment of the sale invoice be afforded the protections of section 363(m) of the Bankruptcy Code; (iii) that the proposed compensation for Harry Davis, LLC as provided in the Agreement is approved and Harry Davis LLC is authorized to collect the internet buyer's premium and remit it to the internet provider, (v) that the Court waive any stay that would otherwise apply pursuant to Bankruptcy Rule 6004(h), (iv) that the Court approve the surcharge of the sale proceeds for the Debtor's costs of sale of the Assets, and (v) the surcharge of all fees and costs incurred in the Auction, and such other relief the Court deems is fair and just.

This the 12th day of February, 2026.

**ESSEX RICHARDS, P.A.**

/s/ John C. Woodman
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax: (704) 372-1357
E-mail: jwoodman@essexrichards.com

# EXHIBIT "A"

**HARRY DAVIS & COMPANY**

Auctions - Appraisals - Consulting

www.HarryDavis.com • 1725 Blvd. of the Allies, Pittsburgh, PA 15219 • 412-765-1170

## AUCTIONEER ENGAGEMENT AGREEMENT

**Harry Davis LLC** ("HD"), is pleased to present this Auctioneer Engagement Agreement (the "Agreement") to engage HD act as the exclusive auctioneer (the "Auctioneer") for a public auction (the "Auction") of certain equipment on behalf of **ORIGIN FOOD GROUP, LLC**, Debtor and Debtor-in-Possession (the "Debtor") in proceedings pending under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of North Carolina, Statesville Division (the "Bankruptcy Court") at case No. 25-50268, as follows:

1. **AUCTION LOCATION & DATE**.

The Auction will be conducted as a public Auction on line on the Internet through an Internet provider determined by HD (the "Internet Provider") from Debtor's facility at 306 Stanley Farm Road, Statesville, NC 28677 (the "Facility") on a mutually agreed upon date to be scheduled following receipt by HD of Debtor' acceptance of this Agreement and the appointment of HD as the Auctioneer by order of the Bankruptcy Court (the "Appointment Order").

2. **EQUIPMENT TO BE SOLD**.

The equipment to be sold shall be all of the items of Equipment designated on Exhibit A attached and such other equipment and related items designated by Debtor for inclusion in the Auction (collectively, the "Equipment"). Once an item of Equipment is advertised for sale by HD it shall remain available for sale unless otherwise agreed in writing by HD.

3. **AUCTION PROMOTION & ADVERTISING**.

Prior to the Auction, HD will conduct a promotional marketing campaign utilizing digital publication on industry websites, Internet publication on HD's Website, www.harrydavis.com, and the Internet Provider's Website, emails to HD's subscriber list and by such other means as HD in its professional judgment deems appropriate. HD shall be permitted to advertise the Auction as a Bankruptcy Court approved auction sale.

HD's customer list, which has been developed over more than 70 years of auction selling to customers throughout the United States, Canada, Latin America and other countries, will be used for marketing the sale of the Equipment.

A detailed catalog listing each item of Equipment included in the Auction with photographs will be prepared by HD and posted on HD's Website and the Internet Provider's Website.

Case 25-50268    Doc 174    Filed 02/12/26    Entered 02/12/26 13:52:55    Desc Main
                              Document    Page 12 of 18
Case 25-50268    Doc 164    Filed 01/22/26    Entered 01/22/26 16:26:02    Desc Main
                              Document    Page 6 of 14

P a g e | 2

4. **SALE PREPARATION; LABOR; ACCESS TO THE FACILITY; INSPECTIONS.**

HD will supervise and direct the preparation of the Equipment for sale. Debtor at its expense shall provide at least one (1) person who is familiar with the Equipment to answer questions from HD and prospective purchasers and to assist in all matters relating to the preparation, inspection, sale and removal of the Equipment from the Facility following its sale.

From the date of the Appointment Order through the end of the Removal Period (as defined in Section 7 below), at no cost and expense shall be provided with reasonable access to the Facility (including before and after normal business hours) together with normal utility service for water, sewer, heat and electricity (the "Utilities") to prepare for and conduct the Auction and the removal of Equipment by the purchasers following its sale.

Prospective purchasers shall be permitted access to the Facility to inspect the Equipment on the day prior to the Auction and at other times by appointment with Debtor.

5. **EXPENSES.**

All marketing expenses for promoting the Auction and all labor and other expenses, including travel, meals and lodging for HD's personnel, to prepare for and conduct the Auction and conclude the sale of the Equipment will be paid by HD without reimbursement by Debtor.

6. **SALE PROCEDURES & TERMS.**

The Equipment will be sold for cash free and clear of all liens, claims and encumbrances of any kind or nature on an "as is," "where is" and "with all faults" basis. HD will consult with Debtor regarding the manner and method of Auction, but shall have the right to present the Equipment and conduct the Auction in the manner, and utilizing the methods, that it deems in its professional judgment to be appropriate.

HD will oversee and manage the Auction and provide all necessary personnel for this purpose. All bidders will be required to register with HD and the Internet Provider and agree to be bound by the Terms of Sale established by HD, the Internet Provider and as may be required by the Bankruptcy Court.

The sale of an item will be final once it has been paid for and removed from the Facility by the purchaser. In the event payment is not made for an item bid upon at the Auction, the item shall be considered a "non-sale." HD, if requested by Debtor, will use its best efforts to resell any non-sale item following the Auction by negotiated sales

Case 25-50268    Doc 174    Filed 02/12/26    Entered 02/12/26 13:52:55    Desc Main
Document    Page 13 of 18
Case 25-50268    Doc 164    Filed 01/22/26    Entered 01/22/26 16:26:02    Desc Main
Document    Page 7 of 14

P a g e | 3

approved by Debtor ("Negotiated Sales"). HD shall not be liable for the collection of the purchase price from the purchaser of any item, provided HD has not authorized the removal of the item from the Facility.

7. **REMOVAL.**

Removal of the Equipment following its sale shall be done under Debtor's supervision by qualified riggers in a workmanlike manner at the expense, risk and liability of the purchasers, including, without limitation, liability for any damages to the premises or for any environmental conditions that may be caused or exacerbated in removal of the Equipment. Purchasers will be required to remove all Equipment within thirty (30) days following the Auction (the "Removal Period"). HD will assist in identifying riggers for removal with the understanding that the riggers will be independent contractors engaged by the purchasers and neither HD nor Debtor shall have any liability for any damages or injuries caused to persons or property in connection with removal of the Equipment. The riggers will be required to remove all debris created by removal of the Equipment and close any exterior openings created for removal of the Equipment in a weathertight manner. All riggers prior to commencement of removal will be required to furnish a certificate of insurance evidencing general liability insurance with limits of no less than Two Million Dollars ($2,000,000) per occurrence with financially sound, duly licensed and reputable insurers on account of injury or damage to persons or property at the Facility, naming Debtor and HD as additional insureds. The purchasers and their riggers shall be given access to the Facility during regular and before and after normal business hours and provided with Utilities at no cost and expense to remove their purchases. HD shall have no obligation to remove any Equipment from the Facility.

8. **SECURITY & RISK OF LOSS.**

Debtor shall be responsible at its sole cost and expense for all security at the Facility through the Removal Period and shall be responsible for all risk of loss or damage to the Equipment until it is paid for by the purchasers, except for any loss or damage caused by HD or its employees, agents or representatives, any rigger removing items on behalf of a purchaser or by any purchaser or their employees, agents or representatives.

9. **HD'S COMPENSATION.**

As its compensation, HD shall be entitled to collect and retain an industry standard Seventeen Percent (17%) buyer's premium (the "Buyer's Premium"), which will be added to the purchase price and paid by the purchasers for each item of Equipment sold at the Auction or by Negotiated Sales of any "non-sale" item following the Auction. Purchasers at the Auction will be required to pay an additional Three Percent (3%) buyer's premium for the Internet Provider (the "Internet Buyer's Premium") which will be collected by HD

Case 25-50268    Doc 174    Filed 02/12/26    Entered 02/12/26 13:52:55    Desc Main
            Document      Page 14 of 18
Case 25-50268    Doc 164    Filed 01/22/26    Entered 01/22/26 16:26:02    Desc Main
            Document      Page 8 of 14

Page | 4

on behalf of the Internet Provider and remitted in its entirety to the Internet Provider at the conclusion of the Removal Period. Debtor shall have no interest in the Buyer's Premium or the Internet Buyer's Premium. In addition to the Buyer's Premium HD shall be paid a ten percent (10%) commission by Debtor (the "Commission") for each item sold hereunder as provided in Section 10 below.

10.    **ACCOUNTING & SETTLEMENT**.

HD will maintain accurate records of the bidding during the Auction and accurate records of all Negotiated Sales. A preliminary accounting for all items sold will be provided to Debtor immediately following the Auction.

All proceeds from the sale of the Equipment (the "Sale Proceeds") will be collected by HD and deposited by HD in its auction account for remittance as provided herein. At the conclusion of the Removal Period HD shall provide an Auctioneer's Report to the Debtor and to such other entities as may be directed in the Appointment Order setting forth the results of the sale and the amount collected for each item sold hereunder. At the time of the delivery of the Auctioneer's Report remittance shall be made to: (a) the Debtor, or as otherwise directed by the Appointment Order, of the Sale Proceeds less the Commission and (b) the Internet Provider of the Internet Buyer's Premium. It is expressly agreed that the Sale Proceeds do not include any applicable sales taxes, the Buyer's Premium or the Internet Buyer's Premium.

Copies of all records of the sale of the Equipment shall be maintained at HD's offices for a period of two (2) years following completion of the Auction and at all times during that two (2) year period shall be available to Debtor or its representatives.

11.    **ENVIRONMENTAL MATTERS; REMOVAL OF HAZARDOUS SUBSTANCES**.

HD shall have no liability or responsibility with respect to any environmental conditions, matters or hazardous materials or substances defined under any federal, state or local statute, rule or ordinance ("Hazardous Substances") with respect to the Equipment and the Facility, including, without limitation, any responsibility for any Hazardous Substances contained in any of the Equipment or for any environmental conditions that may be caused or exacerbated in connection with the removal of the Equipment. All Hazardous Substances (other than lubricants in the Equipment) shall be removed by Debtor at its cost and expense prior to the Auction. Debtor shall undertake all commercially reasonable precautions to assure that Hazardous Substances, if any, at the Facility and in the Equipment do not become exposed to the purchasers or HD personnel and shall indemnify and hold harmless HD, its members, directors, officers, agents and employees from any environmental liability.

Case 25-50268   Doc 174   Filed 02/12/26   Entered 02/12/26 13:52:55   Desc Main
Document   Page 15 of 18
Case 25-50268   Doc 164   Filed 01/22/26   Entered 01/22/26 16:26:02   Desc Main
Document   Page 9 of 14

Page | 5

12. **INSURANCE.**

HD shall carry general liability insurance with limits of no less than Two Million Dollars ($2,000,000) in the aggregate with financially sound, duly licensed and reputable insurers on account of injury or damage to persons or property at the Facility, naming Debtor and any other parties designated by Debtor or by the Appointment Order as additional insureds. Prior to entering the Facility to prepare for the sale of the Equipment HD shall furnish Debtor with a certificate evidencing such coverage.

12. **ENTIRE AGREEMENT.**

This Agreement constitutes the entire agreement between HD and the Debtor and supersedes all (both oral and written) prior discussions, negotiations and agreements and maybe amended only in writing executed by all parties and approved by the Bankruptcy Court.

13. **BANKRUPTCY COURT APPROVAL.**

This Agreement is expressly conditioned upon the entry of the Appointment Order. The Appointment Order shall be in form and substance reasonably acceptable to HD and provide in part that: (a) this Agreement is approved in its entirety; (b) HD shall be permitted to collect and retain the Buyer's Premium, collect and pay the Internet Buyer's Premium to the Internet Provider and retain the Commission from the Sale Proceeds without further application to the Bankruptcy Court; (c) this Agreement shall remain in full force and effect and be binding upon the Debtor and any trustee, party, entity, responsible officer or fiduciary that may be appointed in Debtor's bankruptcy case or any further case involving the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Code and (d) the Bankruptcy Court shall retain exclusive jurisdiction over the parties to the Agreement to enforce the Agreement and the Appointment Order.

[BALANCE OF PAGE INTENTIONALLY BLANK]

Case 25-50268   Doc 174   Filed 02/12/26   Entered 02/12/26 13:52:55   Desc Main
Case 25-50268   Doc 164   Filed 01/22/26   Entered 01/22/26 16:26:02   Desc Main
Document      Page 16 of 18
Document      Page 10 of 14

Page | 6

      We thank you for the opportunity to present this Agreement. If it meets with your approval, please sign below, return a signed copy to us and prepare an application to the Bankruptcy Court for our review to engage HD as Auctioneer.

DATED:_____           **HARRY DAVIS LLC**

                                                    By: _____
                                                        Leonard A. Davis, CEO

Accepted this _____ day of _____, 2026

**ORIGIN FOOD GROUP, LLC**

By: _____

Print Name: _____

Title: _____

# **EXHIBIT "B"**

| WAREHOUSE AREA | Serial Number |
|---|---|
| Modern Packaging Cup Filler | MP-834 |
| Gaulin MS453.5TBS Homogenizer | 69312320 |
| Tetra Pak Single Barrel Freezer, 2000 Series | Z1521061-121763342 |
| Stainless Steel Flow Panel, Including Control Panel | No Serial Found |
| Stainless Steel Tape Machine, Chinese | 13141 2011040068 |
| 2017 Tetra Pak Fruit Feeder | Z2014100-126874958 |
| Waukesha Model 210 U2 PD Pump Skid | 1000002757529 |
| Tri-Clover Centrifugal Pump | 810938 |
| Tri-Clover Centrifugal Pump | 9544 |
| New Orion Shrink Wrapper | V-8515 |
| ARPAC Shrink Wrapper | 13083 |
| Label Applicating Machine | No Serial Found |
| Label Applicating Machine | No Serial Found |
| Cherry Burrell 50 Gallon Uni-Vat, Insulated | 4190 |
| Ingersol Rand Air Compressor | KE6045U98159 |
| New In Crate Reimers Electric Steam Boiler | 0622-132338 |
| Gaulin KL24 Painted Frame Homogenizer | 629596824 |
| Gardner Denver Air Compressor | D090024 |
| Hamilton 300 Gallon Steam Jacketed Kettle | D-4772-3 |
| Marathon 500 HP Electric Motor | WAA115061 |
| Marathon 500 HP Electric Motor | WAA015965 |
| GEA Ammonia Compressor Head Only | T0375 |
| Osgood Cup Filler | 403-346 |
| Stainless Steel Lid Unscrambler With Hopper | No Serial Found |
| Huhtamaki 5 Gallon Bulk Ice Cream Can Maker | RP-104-4 |
| Metler Toledo High Speed Check Weigher | 265682 |
| Quadro Portable Powder Blender | ZC1-0179R 2004 |
| Liqui-Box Single Head Bag In A Box Filler | 95468 |
| Domino Laser Printer | 008002 |
| CTM Label Applicating Machine | No Serial Found |
| New Alfa Laval 6" Centrifugal Pump with 100 HP WEG Motor | R984195 |
| New Alfa Laval 6" Centrifugal Pump with 100 HP WEG Motor | 984194 |
| In-Line Gear Drive With 40 HP Baldor Motor | 201820445-100 |
| Stainless Steel Dairy Control Panel | No Serial Found |
| Stainess Steel Dairy Control Panel | No Serial Found |
| ABB Commander Recorderm Mounted In Stainless Steel Panel | No Serial Found |
| Ammonia Screw Compressor Skid | 4686 |
| Video Jet Model 1650 Ink Jet Printer | 1314717C30ZH |
| Video Jet Model 1650 Ink Jet Printer | 1310594C30ZH |
|  |  |
| OUTSIDE BONE YARD AREA |  |
| Stainless Steel 1,000 Gallon Freon Jacketed Farm Tank | No Serial Found |
| 3" Stainless Steel Holding Tube Assembly, On Stainless Steel Base | No Serial Found |
| Cherry Burrell 3-Barrel Scraped Surface Heat Exchanger, With (3) Centrifugal Pumps, Skid Mounted | 35729VA |
| Stainless Steel Operator platform With Fiberglass Grating | No Serial Found |
| 3" Stainless Steel Holding Tube Assembly, On Stainless Steel Base | No Serial Found |
| Frick Ammonia Evaporator With Fans | 597810100 |
| Frick Ammonia Evaporator With Fans | 597810200 |
| Stainless Steel 1,000 Gallon Vertical Jacketed Processing Tank With Vertical Agitator | 18430 |
| Stainless Steel 1,000 Gaillon Vertical Jacketed Processing Tank With Vertical Agitator | No Serial Found |
| Chevrolet Model C7500 Cab & Chassis Truck | 516080 |
| International Bulk Milk Tanker Truck With 2,200 Gallon Stainless Steel Tank | 1HTMMAAM55H615920 |
|  |  |
| Conference Room |  |
| Recently Purchased From HD&C Microthermics System | 3216.799.3 |