UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| ORIGIN FOOD GROUP, LLC | ) | **Chapter 11** |
| | ) | **Case No. 25-50268** |
| Debtor. | ) | |
| | ) | |

## CHAPTER 11 PLAN OF REORGANIZATION OF ORIGIN FOOD GROUP, LLC

Dated: Charlotte, North Carolina
June /0, 2026

**ESSEX RICHARDS, P.A.**

/s/ John C. Woodman
John C. Woodman (NC Bar No. 42365)
jwoodman@essexrichards.com
1701 South Blvd.
Charlotte, North Carolina 28203
(704) 377-4300

*Counsel for the Debtor and Debtor in Possession*

**ORIGIN FOOD GROUP, LLC**

By: /s/
Halil Ulukaya, Member Manager

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| **ORIGIN FOOD GROUP, LLC** | ) | **Chapter 11** |
| | ) | **Case No. 25-50268** |
| **Debtor.** | ) | |
| _____ | ) | |

## DEBTOR'S PLAN OF REORGANIZATION
## PURSUANT TO § 1121 OF THE BANKRUPTCY CODE

The above-captioned debtor and debtor-in-possession, ORIGIN FOOD GROUP, LLC (the "Debtor"), hereby submits this *Plan of Reorganization Pursuant to § 1121 of the Bankruptcy Code* (the "Plan") pursuant to § 1121 under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

## ARTICLE 1
## DEFINITIONS

As used in this Chapter 11 Plan, the following terms shall have the respective meanings specified below:

1.1     ***Administrative Claim.***  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) allowed under § 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business as a Debtor in Possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtor, (iv) obligations pursuant to executory contracts assumed by the Debtor pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by § 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under § 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

1.2     ***Affiliates.***  Shall refer to those entities Helin, LLC, Eleni Group, LLC, Eleni Real Estate LLC, and Eleni Real Estate One, LLC.

1.3     ***Allowed Administrative Claim.***  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1

1.4    ***Allowed Claim.***  Any Claim against the Debtor (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtor individually or jointly or, if no proof of claim is filed, which has been or hereafter is listed by the Debtor in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim.  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.5    ***Avoidance Action.***  Any and all actions which a Debtor, Debtor in Possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to §§ 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.6    ***Auction Order.***  Shall refer to that certain *Order Granting Motion for Approval of Auction Marketing Agreement and to Sell Free and Clear of any interests in Property* entered on March 20, 2026 [Doc. 192].

1.7    ***Ballot.***  Shall refer to the document that permits impaired parties on voting for or against this Plan.

1.8    ***Bankruptcy Code.***  The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

1.9    ***Bankruptcy Court.***  The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

1.10    ***Bankruptcy Rules.***  The Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.11    ***Business Day.***  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.12    ***Cash.***  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.13    *Causes of Action.*  Shall refer to any and all rights and claims held by the Debtor including Avoidance Actions which may be pursued by the Debtor.

1.14    *Chapter 11 Case.*  The Debtor's bankruptcy case under Chapter 11 of the Bankruptcy Code which is pending before the Bankruptcy Court (Case No. 25-50268).

1.15    *Claim.*  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.16    *Class.*  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.17    *Confirmation Date.*  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.18    *Confirmation Hearing.*  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.19    *Confirmation Order.*  An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.20    *Contingent Claim.*  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.21    *Creditor.*  Any Person that holds a Claim against the Estate.

1.22    *Debtor.*  Refers to ORIGIN FOOD GROUP, LLC.

1.23    *Disclosure Statement.*  The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to § 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.24    *Disputed Claim.*  A Claim which is the subject of a timely, unresolved objection interposed by the Debtor or listed as disputed in the Debtor's schedules; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to § 502(c) of the Bankruptcy Code; provided, further, that the Debtor, in their sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.25  ***Disputed Claims Reserve.***  The interest-bearing reserve account established by the Debtor pursuant to Article 9.3 of this Plan from which all cash distributions under the Plan shall be made with respect to all Disputed Claims.

1.26  ***Effective Date.***  The Business Day on which all of the conditions set forth in Article 11 of this Plan shall have been satisfied or waived.

1.27  ***Estate.***  The bankruptcy estate of the Debtor, including all interests in property that the Debtor's hold.

1.28  ***Final Order.***  An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing is pending.

1.29  ***Impaired Class.***  Shall refer to any class whose legal, equitable, or contractual rights are modified, altered, or reduced by this plan.

1.30  ***General Unsecured Claim.***  Any Unsecured Claim, other than an Administrative Claim, Other Priority Claim, or a Priority Tax Claim.  Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.31  ***Judgment.***  A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing is pending.

1.32  ***Net Proceeds.***  After the satisfaction of Allowed Administrative Expense Claims, Allowed Secured Claims, Allowed Priority Claims, Net Sale Proceeds shall refer to the net proceeds from the sale of certain assets of the Debtor's equipment including those assets sold by Harry Davis & Company.

1.33  ***Other Priority Claims.***  Any Claim to the extent entitled to priority in payment under §§ 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.34  ***Person.***  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.35  ***Petition Date.***  August 20, 2025, the date of the commencement of this Case.

1.36  ***Plan.***  This Chapter 11 Plan or, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.37  ***Priority Non-Tax Claim.***  Any Claim arising prior to the Petition Date entitled to priority in payment under §§ 507(a)(1)-(a)(7) of the Bankruptcy Code.

4

1.38   *Priority Tax Claim.*   Any Claim arising prior to the Petition Date entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.39   *Pro Rata Share.*   As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.40   *Professional.*   Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with §§ 327 and/or 328 of the Bankruptcy Code.'

1.41   *Real Property.*   Shall refer to the real property located at 306 Stamey Farm Rd., Statesville, NC 28677.

1.42   *Rejected Agreement.*   Each unexpired lease or other executory contract of the Debtor which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

1.43   *Reorganized Debtor.*   The Debtor following confirmation of this Plan.

1.44   *Schedules.*   The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtor in the Chapter 11 Case.

1.45   *Secured Claim.*   A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to § 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under § 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.46   *Taxes.*   All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.47   *Unsecured Claim.*   A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.48   *Unsecured Deficiency Claim.*   A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by § 506(a) of the Bankruptcy Code.

5

1.49   *Other Definitions.*   Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.   Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.   The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.   The word "including" shall mean "including without limitation."

# ARTICLE 2
## PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS

2.1   *Administrative Claims Not Classified in this Plan.*   Administrative Claims are not classified and are not entitled to vote to accept or reject the Plan.   The treatment of and consideration to be received by holders of Allowed Administrative Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims, provided however that the Debtor and/or the Estate reserve the right to object to any and all Administrative Claims.   The Debtor's obligations in respect of such Allowed Administrative Claims shall be satisfied in accordance with the terms of this Plan.

2.2   *Administrative Claims Bar Date.*   Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals for services rendered or expenses incurred before the Confirmation Date, must be filed and served on the Debtor and the Bankruptcy Administrator for the Western District of North Carolina no later than **thirty (30) days after the entry of any confirmation order entered approving this Plan (the "Administrative Deadline Date")**.   **ANY PERSON REQUIRED TO FILE AND SERVE A REQUEST FOR ALLOWANCE OF AN ADMINISTRATIVE CLAIM AND WHO FAILS TO TIMELY FILE AND SERVE SUCH REQUEST, SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH CLAIM OR PARTICIPATING IN DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT THEREOF.**   The Administrative Claims Bar Date shall not apply to the expenses of Professionals for services rendered or expenses incurred after the Effective Date.   Any professional fees in connection with prosecuting causes of action that are incurred after the Administrative Deadline Date will not be subject to fee applications.   Parties that already have an Order entered by this Court on their Administrative Claim do not need to resubmit an application.

2.3   *Treatment of Administrative Claims.*   Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as

practicable after the later of (a) the Effective Date; and, (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4     ***Priority Unsecured Tax Claim(s).***   The holder of Allowed Priority Tax Claim shall be paid its Allowed Amount of its Allowed Priority Tax Claim(s), at the option of the Debtor: (a) in full, in Cash; or (b) in monthly installments to such Allowed Priority Tax Claim(s), together with interest at such rate as required by § 511 of the Bankruptcy Code or otherwise as required by § 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim(s).  Payments for Allowed Priority Class Claimants will begin no later than the first full month after the Claims Deadline.  The amount of the Allowed Priority Tax Claim is $112,078.49 as of the Petition Date which consists of the Iredell County Tax Collector, Internal Revenue Service and Ohio Department of Taxation. To the extent that the Debtor timely objects to the any Allowed Priority Tax Claims, the monthly amount will be placed into a Disputed Claims reserve account.  Allowed Priority Tax Claims are not impaired by the Plan and is deemed to have accepted the Plan. The holder of Allowed Priority Class Claimants is not entitled to vote to accept or reject the Plan. Nothing herein shall be construed as a waiver of remedies or elections made by the Debtor as it relates to claim objections related to Allowed Priority Tax Claims.

2.5     ***Priority Unsecured Non-Tax Claim.***  The holder of Allowed Priority Non-Tax Claim shall be paid its Allowed Amount of its Allowed Priority Tax Claim(s), at the option of the Debtor: (a) in full, in Cash; or (b) in monthly installments to such Allowed Priority Non-Tax Claim(s), together with interest at such rate as required by § 511 of the Bankruptcy Code or otherwise as required by § 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim(s).  Payments for Allowed Priority Non-Tax Claimants will begin no later than the first full month after the Claims Deadline.  The alleged amount of the Allowed Priority Non-Tax Claim is $27,519.29 as of the Petition Date.  To the extent that the Debtor timely objects to the any Allowed Priority Non-Tax Claim, the monthly amount will be placed into a Disputed Claims reserve account.  Allowed Priority Non-Tax Claims are not impaired by the Plan and are deemed to have accepted the Plan.  Nothing herein shall be construed as a waiver of remedies or elections made by the Debtor as it relates to claim objections related to Allowed Priority Non-Tax Claims.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims and Equity Interests are classified as follows:

Class 1 shall consist of ***Secured Claim of Retained Assets Treemount Holding, LP***

Class 2 shall consist of ***Secured Claim of Osgood Industries, LLC***

Class 3 shall consist of ***Secured Claim of First Citizens Bank & Trust***

Class 4 shall consist of ***Secured Claim of First Commonwealth Equipment***

*Finance*

Class 5 shall consist of *Secured Claim of First Commonwealth Equipment Finance*

Class 6 shall consist of *Secured Claim of Crown Equipment Corporation*

Class 7 shall consist of *Secured Claim of Liquidated Assets TH*

Class 8 shall consist of *Secured Claim of Huntington National Bank*

Class 9 shall consist of *Secured Claim of DariFill, Inc. ("DF")*

Class 10 shall consist of *Secured Claim of US Bank ("US Bank")*

Class 11 shall consist of *Secured Claim of Navitas Corp. ("Navitas")*

Class 12 shall consist of *Allowed Claim of Affiliates*

Class 13 shall consist of *Allowed General Unsecured Claims*

Class 14 shall consist of *Allowed Equity Interest Holders*

## Class 1: Secured Claim of Treemount Holding, LP ("TH")

### 3.1.1    Classification.

Class 1 consists of the Allowed Secured Claim of TH. The Allowed Secured of TH is set at **$200,000.00** (the "Class 1 Set Amount") in connection with that certain blanket lien for assets retained by the Debtor from the 2020 transaction.

### 3.1.2    Treatment.

TH receive a fully secured claim at $200,000.00. The holder of Allowed Class 1 shall be paid its Class 1 Set Amount, at the option of the Debtor: (a) in full, in Cash on the Effective Date; or (b) in monthly installments as provided below or otherwise as agreed between Class 1 claimant and the Debtor. If a monthly payment is provided for, TH shall be paid the Allowed Amount of its Class 1 Set Amount provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $2,874.01 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months. Payments for Allowed Class 1 will begin the first full month, that is 30 days after the Claims Deadline. Should the foregoing Collateral be surrendered at any time after the Effective Date, said surrender shall operate as a full and final satisfaction of any and all claims the Allowed Class Claimant shall have against the Debtor, provided however, should the collateral be retained, any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

8

The holder of the Allowed Class 1 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 1 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.1.3 *Impairment and Voting.*

Class 1 is impaired by the Plan. TH is entitled to vote on the Plan.

### Class 2: Secured Claim of Osgood Industries, LLC ("Osgood")

#### 3.2.1 *Classification.*

Class 2 consists of the Allowed Secured Claim of Osgood. The Allowed Secured of Osgood is set at **$0.00** (the "Class 2 Set Amount").

#### 3.2.2 *Treatment.*

Osgood shall receive nothing on account of its Class 2 Claim which is deemed allowed in the amount of $0.00. Nothing herein shall be construed as a waiver of remedies or to otherwise

prevent the Debtor from objecting to any portion of its general unsecured claim as provided in this Plan.

Osgood shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

       3.2.3 *Impairment and Voting.*

Class 2 is impaired by the Plan. Osgood is entitled to vote on the Plan.

**Class 3: Secured Claim of First Commonwealth Equipment Finance ("FCEC")**

       3.3.1 *Classification.*

Class 3 consists of the Allowed Secured Claim of FCEC. The Allowed Secured of FCEC is set at **$50,000.00** (the "Class 3 Set Amount") in connection with that certain 2 Loop.

Collateral – Tetra Pack 2 Loop

       3.3.2 *Treatment.*

10

FCEC receive a fully secured claim at $50,000.00 on the collateral provided for in Class 3. FCEC shall be paid the Allowed Amount of its Class 3 Set Amount provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $718.50 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months. Payments for Allowed Class 3 will begin the first full month, that is 30 days after the Claims Deadline. Should the Collateral be surrendered at any time after the Effective Date, the Allowed Class Claimant shall receive the value of its Secured Claim.

The holder of the Allowed Class 3 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 3 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

3.3.3   *Impairment and Voting.*

Class 3 is impaired by the Plan. The holder(s) of Class 3 Claims are entitled to vote on the Plan.

***Class 4: Secured Claim of First Commonwealth Equipment Finance ("FCEC")***

3.4.1   *Classification.*

11

Class 4 consists of the Allowed Secured Claim of FCEC. The Allowed Secured of FCEC is set at **$60,000.00** (the "Class 4 Set Amount") in connection with that certain Boiler.

Collateral - Boiler

### 3.4.2 *Treatment.*

FCEC receive a fully secured claim at $60,000.00. FCEC shall be paid the Allowed Amount of its Class 4 Set Amount provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $862.20 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months. The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date. Payments for Allowed Class 4 will begin the first full month, that is 30 days after the Claims Deadline. Should the foregoing Collateral be surrendered at any time after the Effective Date, said surrender shall operate as a full and final satisfaction of any and all claims the Allowed Class Claimant shall have against the Debtor, provided however, should the collateral be retained, any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

The holder of the Allowed Class 4 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 4 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.4.3   *Impairment and Voting.*

Class 4 is impaired by the Plan. The holder(s) of Class 4 Claims are entitled to vote on the Plan.

### *Class 5: Secured Claim of First Citizens Bank & Trust ("FCB")*

### 3.5.1   *Classification.*

Class 5 consists of the Allowed Secured Claim of FCB. The Allowed Secured of FCB is set at **$15,000.00** (the "Class 5 Set Amount") in connection with that certain CEM Smart Trac Moisture Fat System.

Collateral: CEM Smart Trac Moisture Fat System

### 3.5.2   *Treatment.*

FCB receive a fully secured claim at $15,000. FCB shall be paid the Allowed Amount of its Class 5 Set Amount provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $215.55 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months. Payments for Allowed Class 5 will begin the first full month, that is 30 days after the Claims Deadline. Should the foregoing Collateral be surrendered at any time after the Effective Date, said surrender shall operate as a full and final satisfaction of any and all claims the Allowed Class Claimant shall have against the Debtor, provided however, should the collateral be retained, any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

The holder of the Allowed Class 5 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 5 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment,

13

preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.5.3   *Impairment and Voting.*

Class 5 is impaired by the Plan. FCB is entitled to vote on the Plan.

### Class 6: Secured Claim of Crown Equipment Corporation ("Crown")

### 3.6.1   *Classification.*

Class 6 consists of the Allowed Secured Claim of Crown.  The Allowed Secured of Crown is set at **$7,500.00** (the "Class 6 Set Amount") in connection with that certain Lift Truck and Battery.

Collateral: Lift Truck and Battery (Stand-up Counterbalance Rider)

### 3.6.2   *Treatment.*

Crown receive a fully secured claim at $7,500.00.  Crown shall be paid the Allowed Amount of its Class 6 Set Amount provided the Debtor will receive credit for any payments made during the case.  Monthly payments will be in the amount of $107.78 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months.  The holder of the Allowed claim herein shall retain its existing liens, privileges and encumbrances, at the value provided for in this Plan, but shall retain the same validity, priority and extent that existed on the Petition Date.  Payments for Allowed Class 6 will begin the first full month, that is 30 days after the Claims Deadline.  Should the foregoing Collateral be surrendered at any time after the Effective Date, said surrender shall operate as a full and final satisfaction of any and all claims the Allowed Class Claimant shall have against the Debtor, provided however,

14

should the collateral be retained, any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

The holder of the Allowed Class 6 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date.  In the event that the holder of Class 6 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date.  Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

3.6.3   *Impairment and Voting.*

Class 6 is impaired by the Plan. Crown is entitled to vote on the Plan.

3.7   ***Class 7: Secured Claim of Liquidated Assets for TH***

3.7.7   *Classification.*

Class 7 consists of the Allowed Secured Claim of Liquidated Assets for TH.

3.7.7   *Treatment.*

15

Subject to payment of administrative expense claims and Claims of higher priority, if any, this Claim shall be treated as a fully secured obligation of the Reorganized Debtor. The Net Proceeds realized from any sale of the liquidated assets pursuant to this Court's Auction Order in which TH held a validly perfected security interest or lien as of the Petition Date shall be distributed to TH on the Claims Deadline.

### 3.7.3 *Impairment and Voting.*

Class 7 is impaired by the Plan. The holder(s) of Class 7 Claims are entitled to vote on the Plan.

## 3.8 *Class 8: Secured Claim of Huntington National Bank ("HNB")*

### 3.8.8 *Classification.*

Class 8 consists of the Allowed Secured Claim of Huntington National Bank. The Allowed Secured of HNB is set at **$10,000.00** (the "Class 8 Set Amount") in connection with that certain STEAM Generator and Surge Drum and Turbine Meter.

Collateral: <u>STEAM Generator and Surge Drum and Turbine Meter</u>.

### 3.8.8 *Treatment.*

STEAM Generator

HNB receive a fully secured claim at $10,000.00. HNB shall be paid the Allowed Amount of its Class 8 Set Amount provided the Debtor will receive credit for any payments made during the case. Monthly payments will be in the amount of $143.70 principal and interest at 5.5% per annum. This monthly payment will be made monthly for eighty four (84) consecutive months. Payments for Allowed Class 8 will begin the first full month, that is 30 days after the Claims Deadline. Should the foregoing Collateral be surrendered at any time after the Effective Date, said surrender shall operate as a full and final satisfaction of any and all claims the Allowed Class Claimant shall have against the Debtor, provided however, should the collateral be retained, any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

The holder of the Allowed Class 8 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 1 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts,

leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

Surge Drum and Turbine Meter

HNB receive a fully secured claim at $200.00. HNB shall be paid the Allowed Amount of its $200.00 provided the Debtor will receive credit for any payments made during the case. At the Debtor's election, the Debtor will pay this amount on or before the Claims Deadline. Any deficiency associated with the Claim provided herein may be included in Class 13 General Unsecured Claims.

The holder of the Allowed Class 8 Claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. In the event that the holder of Class 1 does not retain its existing lien as outlined herein, said holder shall cancel its lien, encumbrance on the Effective Date. Entry of any Confirmation Order shall be a determination that the Debtor's property is free and clear of any and all liens, security interest, encumbrances and claims (including, but not limited to, any "claims" as defined in 11 U.S.C. § 101(5)), reclamation claims, mortgages, pledges, covenants, restrictions, hypothecations, charges, indentures, loan agreements, causes of action, instruments, contracts, leases, licenses, options, rights of first refusal, offsets, recoupment, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, claims for reimbursement, successor liability, contribution, indemnity or exoneration, assignment, preferences, debts, charges, suits, rights of recovery, interests, products liability, alter-ego, environmental, successor liability, tax and other liabilities, and in each whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

17

or undisputed, or known or unknown whether arising prior to, on or subsequent to the Petition Date, whether imposed by agreement, understanding law, equity or otherwise.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.8.3  *Impairment and Voting.*

Class 8 is impaired by the Plan. The holder(s) of Class 8 Claims are entitled to vote on the Plan.

### 3.9  *Class 9: Secured Claim of DariFill, Inc. ("DF")*

#### 3.9.1  *Classification.*

Class 9 consists of the Allowed Secured Claim of DF. The Allowed Secured of DF is set at **$0.00** in connection with that certain DariFill machine for ice cream.

#### 3.9.2  *Treatment.*

The Debtor will surrender the DariFill machine to DF for full satisfaction of any and all claims against the Debtor, its estate including a priority or administrative expense claim.

#### 3.9.3  *Impairment and Voting.*

Class 9 is impaired by the Plan. The holder(s) of Class 9 Claims are entitled to vote on the Plan.

### 3.10  *Class 10: Secured Claim of US Bank, N.A.. ("US Bank")*

#### 3.10.1  *Classification.*

Class 10 consists of the Allowed Secured Claim of US Bank. The Allowed Secured of US Bank is set at **$0.00.**

#### 3.10.2  *Treatment.*

18

Class 10 Claimant shall receive nothing as a secured creditor. Nothing herein shall be construed as a waiver of remedies to prevent the Debtor from objecting to said claim being unsecured.

### 3.10.3 *Impairment and Voting.*

Class 10 is impaired by the Plan. The holder(s) of Class 10 Claims are entitled to vote on the Plan.

## 3.11  *Class 11: Secured Claim of Navitas Corp. ("Navitas")*

### 3.11.1 *Classification.*

Class 11 consists of the Allowed Secured Claim of Navitas. The Allowed Secured of Navitas is set at **$0.00.**

### 3.11.2 *Treatment.*

Class 11 Claimant shall receive nothing as a secured creditor, including but not limited to, any and all proceeds from the Auction. Nothing herein shall be construed as a waiver of remedies to prevent the Debtor from objecting to said claim being unsecured.

**PLEASE TAKE NOTICE THAT THIS PLAN DETERMINES CERTAIN LIEN RIGHTS UNDER ARTICLE 9 OF THE UNIFORM COMMERCIAL CODE. CONSEQUENTLY, YOU SHOULD READ THIS PLAN IN ITS ENTIRIETY. THIS PLAN RESOLVES CERTAIN LIEN RIGHTS OF CREDITORS OF THE DEBTOR EVIDENCED BY UCC-1 FINANCING STATEMENTS CLAIMING A LIEN AGAINST THE DEBTOR'S ASSETS.**

**THIS PLAN SHOULD BE TREATED AS A CLAIM OBJECTION FOR THE PURPOSES OF DETERMINING THE VALUE OF THE CREDITOR'S SECURED CLAIM AS WELL AS A MOTION TO VALUE ANY SECURED CREDITOR'S COLLATERAL PURSUANT TO SECTION 506(A).**

### 3.11.3 *Impairment and Voting.*

Class 11 is impaired by the Plan. The holder(s) of Class 11 Claims are entitled to vote on the Plan.

## 3.12  *Class 12: Allowed Claim of Affiliates*

### 3.12.1 *Classification.*

Class 12 consists of the Allowed Claim of Affiliates of the Debtor.

### 3.12.2 *Treatment.*

19

In consideration of new value, Class 12 Claimant shall receive nothing as a secured creditor, including but not limited to, any and all proceeds from the Auction.

### 3.12.3 *Impairment and Voting.*

Class 12 is impaired by the Plan. The holders of Class 12 Claims are entitled to vote on the Plan.

## 3.13   *Class 13: Allowed General Unsecured Claims*

### 3.13.1 *Classification.*

Class 13 consists of the Allowed General Unsecured Claims except those General Unsecured Claim(s) which have been separately and specifically classified by the Plan.

The amount of filed general unsecured is in the amount of $12,796,409.53. The amount of general unsecured claims scheduled with no supplemental proof of claim is $1,355,266.61. After the appropriate anticipated claims objections, subordinations and/or settlements, the Debtor estimates that the amount of the Class 13 Claim is $5,449,132.80 (the "Class 13 Estimated Pool"). Nothing herein shall be construed as a waiver of remedies or elections made by the Debtor as it relates to claim objections.

### 3.13.2 *Treatment.*

After the Claims Deadline and subject to allowed Administrative Claims, the holders of the Allowed Class 13 Claims will receive distributions in an amount equal to their in the unsecured creditor pool in the monthly amount of $1,962.42, which equals a pro rata share of a distribution stream currently projected to be in an amount equal to $1,962.42 per month over the sixty (60) month Plan term, resulting in an estimated recovery of approximately 2.15% for the Class 13 Estimated Pool. Monthly payments for Class 13 will be escrowed into a designated account established by the Debtor and remitted by the Debtor to Allowed Class 13 Claims on a semi-annual basis. Monthly payments provided herein shall begin the first full month after the expiration of the Claims Deadline.

### 3.13.3      *Impairment and Voting.*

Class 13 is impaired by the Plan. The holder of the Class 13 claim is entitled to vote on the Plan.

## 3.14   *Class 14: Allowed Equity Interest Holders*

### 3.14.1 *Classification.*

Class 14 consists of the Equity Interests in the Debtor held by the member of the Debtor.

### 3.14.2 *Treatment.*

20

The Equity Interests in the Debtor shall remain with the Debtor's insider (statutory or non-statutory). No equity distribution shall be made to the holder of Equity Interests, unless and until all Allowed Claims and Class 4 have been paid in full.

3.14.14      *Impairment and Voting.*

Class 14 is not impaired by the Plan. The holders of Class 14 Claims are not entitled to vote on the Plan.

# ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1      ***Impaired Classes Vote.***   Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.2      ***Acceptance by Impaired Classes of Claims.***   Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

4.3      ***Designation of Classes Entitled to Vote.***   Classes 1-13 are impaired and the holders of Claims and Interests in those Classes are entitled to vote on the Plan.

4.4      ***Cramdown Confirmation.***   With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by Cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

# ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1      ***Assumption; Exceptions Thereto.***  Each executory contract or unexpired lease of the Debtor that has not expired by its own terms before the Effective Date or previously been assumed or rejected by the Debtor pursuant to an order of the Bankruptcy Court, shall be REJECTED as of the Effective Date pursuant to §§ 365 and 1123 of the Bankruptcy Code, provided however, the Debtor's corporate documents and that certain contract (Contract #24-085-3008) (the "Grant   Contract") with the North Carolina Agriculture Department are hereby ASSUMED and the Debtor will continue to perform customer clients pursuant to contract on a month to month basis at the Debtor's discretion. Any executory contract or unexpired lease pursuant to the Plan shall be and hereby is rejected by the Debtor as of the Effective Date deemed a Rejected Agreement and shall not be fully enforceable by the Debtor or the

21

Reorganized Debtor in accordance with its terms, including all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. To the extent such an agreement is disguised as a financing agreement, the Debtor shall treat such agreement as a secured claim and claimant shall review Article 3 of this Plan.

5.2 ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of any assumptions or rejections pursuant to § 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interest of the Debtor, its estate, and all parties in interest. In addition, the entry of the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor and the Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed or rejected under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtor and/or the Reorganized Debtor against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case. All Rejected Agreements shall be conclusively deemed burdensome to and not in the best interest of the Estate and shall be effective as of the Petition Date.

5.3 ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.*** Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtor, the Reorganized Debtor, and the Estate, and the holders of any such Claims are barred from receiving any distributions under the Plan.

## ARTICLE 6
## DISTRIBUTIONS UNDER THE PLAN

6.1 ***Distributions Under the Plan.*** The Debtor, Debtor's counsel or a professional hired by the Debtor and approved by this Court, shall make all distributions to the holders of Allowed Claims that are required under this Plan.

6.2 ***Intentionally Omitted.***

22

6.3    *Delivery of Distributions.*  Distributions to a holder of an Allowed Claim shall be made at the address of such holder as indicated in the Debtor's records or the address on the proof of claim filed with the Bankruptcy Court.  In the event that any such distribution is returned as undeliverable, the Debtor shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Debtor have determined such then current address, provided however, that if any distribution remains unclaimed after the first anniversary after distribution, such distribution shall be deemed unclaimed property pursuant to § 347(b) of the Bankruptcy Code and shall become vested in the Estate.  In such event, the Claim holder for such distribution shall no longer be deemed to have an Allowed Claim without further order of this Court, and such holder shall be deemed to have waived its rights to such distribution under this Plan pursuant to § 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.

6.4    *Manner of Payment Under the Plan.*  At the option of the Debtor, any payment to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

6.5    *No Fractional Distributions.*  No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

6.6    *Withholding and Reporting.*  The Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## PLAN PAYMENTS AND FUNDING THE PLAN

7.1    *Plan Payments*.  The Plan contemplates that distributions will be paid by the Debtor or Debtor's counsel. If an Allowed Claim does not have a specific due date, the distribution shall be made timely as long as the distribution was made during the applicable month, quarter or year associated with the Allowed Claim.

7.2    *Sources of Funding*.  Distributions to holders of Allowed Claims will be made from the Debtor's operations as well as any funds made under the absolute priority rule.

## ARTICLE 8
## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

23

8.1 *Plan Administrator/Disbursing Agent.* The Debtor, Debtor's counsel or a professional approved by this Court, will act as a Plan Administrator/Disbursing Agent for the distributions / payments provided in the Plan.

8.2 *Authority to Act Following Confirmation Date.* Upon confirmation of this Plan, the Debtor and the Reorganized Debtor shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan.

8.3 *Status of Liens of Secured Tax Claims and Other Lien Claimants.* Unless otherwise provided in this Plan, or by Order of the Bankruptcy Court, on the Effective Date, all existing liens held by any Class or Classes on the Debtor's assets, during the term of payments under this Plan, shall retain the same validity, priority and extent that existed on the Petition Date, provided however, all other liens and encumbrances shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule. Provided further, that upon full consummation of this Plan and the entry of the Debtor's discharge, all liens of any claimant provided for in the Plan will be released, cancelled and deemed to be null and void. Thirty days following the entry of the Debtor's payments to any set claim provided in this Plan's Article 3, each creditor holding a lien on the Debtor's assets shall file a notice of satisfaction with the appropriate authorities.

8.4 *Effectuating Documents and Further Transactions.* The Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate, for and on behalf of the Estate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

8.5 *Equity Interests Directors and Officers of the Reorganized Debtor.* Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, Halil Ulukaya shall be the director and officer of the Debtor immediately prior to the Effective Date. Each such director and officer shall serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal in accordance with the terms of the Certificate of Incorporation, Operating Agreement, Declaration and other governing documents of the Reorganized Debtor (as the same may be amended after the Effective Date) and applicable state law. The Debtor's principal Halil Ulukaya shall remain as the officer in charge of the day-to-day operations and shall retain his interest in the Reorganized Debtor per the terms of this Plan. Mr. Ulukaya shall be compensated for his employment with the Debtor at a minimum salary of $70,000.00 which may increase based upon general standard of living increases.

## ARTICLE 9
## RESOLUTION OF DISPUTED CLAIMS

9.1 *Objections to Claims; Prosecution of Disputed Claims.* The Debtor and/or the

Reorganized Debtor shall have the exclusive right to object to the allowance, amount or classification of Claims asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtor, as applicable, or compromised and settled in accordance with the business judgment of the Debtor, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims shall be filed no later than one hundred and eighty (180) days after the Confirmation Date (the "Claims Deadline"), subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Debtor without notice upon ex *parte* motion.

9.2 ***Estimation of Disputed Claims.*** The Debtor may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code whether or not the Debtor or the Estate have previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim at any time, including, without limitation, during the pendency of an appeal relating to such objection.

9.3 ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order. The Debtor shall set aside or reserve a portion of the consideration payable to the holders of Allowed Claims in a particular Class to be held in the trust account for the Debtor and for such Class in an amount sufficient to pay to the holders of all Disputed Claims in such Class the full distributions they may be entitled to if their respective Claims were ultimately to be allowed in full by Final Order.

## ARTICLE 10
## EFFECT OF CONFIRMATION OF PLAN

10.1 ***Vesting of Assets and Retained Causes of Action.*** All assets of the Debtor and Debtor in Possession shall remain property of the Estate following confirmation of the Plan until closure of the Chapter 11 Case, unless ordered otherwise by the Bankruptcy Court after notice and a hearing. Upon closure of the Chapter 11 Case, all remaining property of the Estate shall vest in the Reorganized Debtor free and clear of any and all Claims, liens, interests, and other charges and/or encumbrances. The Reorganized Debtor may then own, use, acquire and dispose of its property free of the Bankruptcy Court's supervision. For the avoidance of doubt, following confirmation of the Plan the Debtor shall retain all rights and is authorized to commence and pursue, as it deems appropriate, any and all Causes of Action, Avoidance Actions, other claims, causes of action, rights, objections, and defenses, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan or in any Plan exhibit. Unless otherwise ordered by the Bankruptcy Court, requests for setoff against the Debtor's vested assets, must be filed and served on the Debtor, and the Bankruptcy Administrator for the Western District of North Carolina no later than thirty (30)

25

days after the Confirmation Date.

10.2   ***Binding Effect.***   Subject to the occurrence of the Effective Date as set forth in Article 11 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor and such holder's successors and assigns, whether or not such holder's Claim is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

10.3   ***Discharge.***   Except as otherwise specifically provided in this Plan, in the Confirmation Order, or in Section 1141(d) of the Bankruptcy Code, the rights afforded in this Plan and the treatment of the Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Equity Interests in the Debtor, the Debtor in Possession, the Reorganized Debtor or the assets and properties of, or interests in, the Debtor, the Debtor in Possession or the Reorganized Debtor of any nature whatsoever, including any interest accrued on any Claim from and after the Petition Date. Except as expressly otherwise provided herein or in the Confirmation Order, on the Effective Date, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtor and the Debtor in Possession (including any Claims based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of the Debtor or Debtor in Possession, or any conduct for which the Debtor or Debtor in Possession may be deemed to have strict liability under any applicable law), and all Equity Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtor shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not canceled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtor, the Debtor in Possession, or the Reorganized Debtor, or the assets, properties, or Interests in or property of the Debtor, the Debtor in Possession, or the Reorganized Debtor of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not canceled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

10.4   ***Indemnification Obligations.***   Subject to the occurrence of the Confirmation Date as set forth in Article 11 of this Plan, the obligations of the Debtor to indemnify, reimburse or limit liability of any person who is serving or has served as one of the Debtor's employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the Debtor, shall be deemed to be and treated as executory contracts that are rejected by the Debtor pursuant to the

26

Plan and § 365 of the Bankruptcy Code.

10.5   **Injunction**.   Except as otherwise expressly provided herein, and except with respect to enforcement of the Plan, all Entities who have held, hold or may hold Claims against the Debtor are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtor or the Estate (ii) the enforcement, attachment, collection or recovery by any manner or means of any Judgment, award, decree or order against the Debtors, the Estate, with respect to any such Claim or Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Estate or any property or interest therein that formerly was property of the Estate with respect to any such Claim or Interest, (iv) with respect to any Claim or Interest, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, the Estate,  or against the property or interests in property of any of them, and (v) pursuing any Claim released herein.

10.6   **Term of Certain Injunctions.**   Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case, whether pursuant to the provisions of the Bankruptcy Code, the Plan, or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Debtor may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

10.7   **Preservation of All Causes of Action Not Expressly Settled or Released.** For the avoidance of doubt, and without limiting or restricting any other provisions of this Plan, including but not limited to Article 10.1 "Vesting of Assets and Retained Causes of Action," unless a Claim or Cause of Action against a Creditor or other Entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for adjudication or pursuit by the Debtor and/or the Estate after the Confirmation Date, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise.  The Debtor expressly reserves, and the Debtor shall be authorized to exercise, the right to pursue or adopt any claims (and any defenses) or Causes of Action of the Debtor, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. For the avoidance of doubt and out of an abundance of caution, the Debtor shall be a representative of the Estate appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted

business with the Debtor, their related entities or affiliates, or leased equipment or property from the Debtor, should assume that such obligation, transfer, or transaction may be reviewed by the Debtor subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action or claim or demand after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtor in the Chapter 11 Case, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtor's Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

10.8   *Exculpation.*   To the fullest extent permitted by § 1125(e) of the Bankruptcy Code, when acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Debtor, the Estate, and their respective members, officers, directors, employees, representatives, attorneys, appointed professionals, counsel, or agents shall be deemed not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale, or purchase of securities in connection with the pursuit and approval of the Disclosure Statement and the pursuit of confirmation of the Plan.  Nothing contained herein shall expand the provision of § 1125(e) of the Bankruptcy Code.

10.9   *No Successor Liability.*  Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtor, the Estate nor the related entities will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtor or any of the Debtor's past or present affiliates or subsidiaries relating to or arising out of the operations of or assets of the Debtor or any of the Debtor's past or present subsidiaries or affiliates, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. Neither the Debtor, the Estate, the Reorganized Debtor, nor the Debtor's related entities shall have any successor or transferee liability of any kind or character, for any Claims; provided however, that the Estate shall remain subject to the obligations for the payments specifically and expressly provided, and solely in the manner stated, in the Plan.

## ARTICLE 11
## THE EFFECTIVE DATE OF THE PLAN

11.1   *Conditions to Occurrence of Effective Date of Plan.* The "effective date of the plan," as used in § 1191 of the Bankruptcy Code, shall not occur until the "Effective Date" as defined in this Plan. The Effective Date shall occur within forty-five days from the entry of the Confirmation Order.  The Debtor may file a Notice of Effective Date but is not required to do so.

## ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1   *Payment of Statutory Fees.*  All fees payable pursuant to § 1930 of Title 28 of the United States Code shall be paid on the Effective Date by the Debtor, when and in the amount as

required by applicable law. Provided further that the Debtor shall continue to pay the statutory fees referenced in this section as and when they are due until the case is closed.

12.2 *Notice.* Any notice required or permitted to be provided to the Debtor under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, addressed to counsel for the Debtor, after confirmation of the Plan, the Reorganized Debtor at the following addresses:

ESSEX RICHARDS, P.A.
John C. Woodman
1701 South Boulevard
Charlotte, North Carolina 28203

and

ORIGIN FOOD GROUP, LLC
306 Stamey Farm Rd
Statesville, NC 28677

12.3 *Headings.* The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

12.4 *Governing Law.* Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

12.5 *Exemption from Transfer Taxes.* Pursuant to § 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

12.6 *Further Authorizations.* The Debtor or the Reorganized Debtor, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

12.7 *Successors and Assigns.* The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

12.8 *Modification and Amendment of Plan.* Subject to § 1127 of the Bankruptcy

Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified by the Debtor and/or the Estate.

12.9    **Additional Documents.**  The Debtor and Reorganized Debtor have the authority, after direction from the Debtor and/or the Estate, to take any and all actions and execute (and perform) any agreements and documents as the Debtor deem necessary or appropriate in her reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

12.10    **New Value Contribution.**  To retain his Equity Interest in the Reorganized Debtor, Halil Ulukaya shall (i) pay to the Reorganized Debtor a minimum of $100,000 as his new value contribution (the "Consideration") in June 2026, and (ii) waive, release, and forever discharge any claims Halil Ulukaya, the Affiliates or any entity owned by Halil Ulukaya holds against the Debtor, and this Estate including any administrative expense claim.  The Consideration may come in the form of the Insider leveraging equity in an Affiliate for the benefit of the Debtor.

## ARTICLE 13
## RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

13.1    **Executory Contracts and Unexpired Leases.**  To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor are a party or with respect to which the Estate may be liable, (ii) to review and determine all cure payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

13.2    **Causes of Action.**  To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by or on behalf of the Estate.

13.3    **Disputed    Claims,    Contingent    Claims    and    Unliquidated    Claims Allowance/Disallowance.**  To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

13.4    **Enforcement/Modification of Plan.**

30

13.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

13.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

13.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

13.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

13.4.5 To hear and determine any issue relating to distributions under the Plan.

13.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under § 105 of the Bankruptcy Code.

13.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by § 1142 of the Bankruptcy Code.

13.5   **Compensation of Professionals.**   To hear and determine all applications for allowances of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in § 1129(a)(4) of the Bankruptcy Code.

13.6   **Settlements.**   To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtor or the Estate.

13.7   **Taxes.**   To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor may be liable, directly or indirectly, in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code.

13.8   **Section 506(b) Claims.**   To determine the amounts, if any, of the reasonable fees, costs and other charges payable under § 506(b) of the Bankruptcy Code.

13.9   **Specific Purposes.**   To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

13.10   **Final Decrees.**   To enter an order or final decree closing the Chapter 11 Case.

**[SIGNATURES ON REMAINING PAGE]**

31

Dated: Charlotte, North Carolina
June ___, 2026

ESSEX RICHARDS, P.A.

/s/ John C. Woodman
John C. Woodman (NC Bar No. 42365)
jwoodman@essexrichards.com
1701 South Blvd.
Charlotte, North Carolina 28203
(704) 377-4300
*Counsel for the Debtor and Debtor in Possession*

**ORIGIN FOOD GROUP, LLC**

By: __/s/_____
Halil Ulukaya, Member Manager

**EXHIBIT A**

LIQUIDATION ANALYSIS

## BEST INTERESTS TEST - LIQUIDATION ANALYSIS

Notwithstanding acceptance of the Plan in accordance with § 1126 of the Bankruptcy Code, the Court must find that each member of an impaired class of creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor and the Estate believe that the Plan complies with this "best interests" test.

Conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. Furthermore, the creditors would receive far less than they would realize in this Chapter 11 Plan.

When analyzing the Debtor's proposed plan, creditors should consider the amount of such liens, as well as the likely sale values of the Debtor's encumbered and unencumbered property and the recovery thereof.

If this case were converted to a Chapter 7 proceeding, the Debtor anticipates that the trustee would not be unable to recover more than when the Auctioneer would likely recover (given the distressed nature of a Chapter 7 liquidation). Assuming the assets of the Estate with equity were sold at their liquidation values as shown above, the estimated sale expenses and deductions required before payments to unsecured creditors are summarized in the following table:

34

## LIQUIDATION ANALYSIS

| Assets | Gross | Lien | % Realizable | Amount Realizable |
|---|---|---|---|---|
| Bank Accounts | $64,598.00 | No | 100% | $64,598.00 |
| Deposits | $13,000.00 | No | 0% | $0.00 |
| Accounts Receivable | $365,850.45 | No | 10% | $36,585.044 |
| Inventory | $345,125.91 | No | 0% | $0.00 |
| Machinery[1] | $5,090,261.26 | Yes | 5% | $264,749.65 |
| | | | | |
| **Total Realizable Assets:** | | | | **$365,932.69** |
| | | | | |
| **Liabilities** | | | | |
| | | | | |
| Filed Secured Debt | | | | $4,261,360.83 |
| Priority Claims | | | | $37,406.91 |
| | | | | |
| **Liquidation Costs** | | | | |
| | | | | |
| Trustee's Commission (5%) | | | | $18,296.63 |
| Ch. 7 Admin. Fees | | | | $20,000.00 |
| Ch. 11 Admin Claims (est.) | | | | $100,000.00 |
| | | | | |
| **Total Liabilities:** | | | | **$4,437,064.37** |
| **Realizable Assets Net Liabilities:** | | | | **$0.00** |
| | | | | |
| **Filed General Unsecured Claims:** | | | | **$12,796,409.53** |
| | | | | |
| **Available Recovery in a Liquidation:** | | | | **$0.00** |
| | | | | |

Thus, the sale of the Debtor's assets in a hypothetical liquidation would yield no additional funds for distribution to unsecured creditors.

Therefore, confirmation of the Plan is preferable to liquidating the case under Chapter 7 of the Bankruptcy Code. Creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor and the Estate believe that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

---

[1] This amount reflects the amount provided in the Schedules, however, it is not a true value but rather a historical cost.

**EXHIBIT B**

FINANCIAL PROJECTIONS

Exhibit B

| | 2027 | 2028 | 2029 | 2030 | 2031 |
|---|---|---|---|---|---|
| **Sales** | | | | | |
| Product Sales | 6,354,352.94 | 6,417,896.47 | 6,482,075.44 | 6,546,896.19 | 6,612,365.15 |
| Total Sales | 6,354,352.94 | 6,417,896.47 | 6,482,075.44 | 6,546,896.19 | 6,612,365.15 |
| **Freight & Discounts** | | | | | |
| Billable Freight | 92,400.00 | 93,324.00 | 94,257.24 | 95,199.81 | 96,151.81 |
| Total Freight & Discounts | 92,400.00 | 93,324.00 | 94,257.24 | 95,199.81 | 96,151.81 |
| **Cost of Goods Sold** | | | | | |
| Production Costs | 2,846,219.00 | 2,874,681.19 | 2,903,428.00 | 2,932,462.28 | 2,961,786.90 |
| Total Cost of Goods Sold | 2,846,219.00 | 2,874,681.19 | 2,903,428.00 | 2,932,462.28 | 2,961,786.90 |
| Gross Profit | 3,415,733.94 | 3,449,891.28 | 3,484,390.19 | 3,519,234.10 | 3,554,426.44 |
| **Operating Expenses** | | | | | |
| Management Salaries | 276,546.36 | 279,311.82 | 282,104.94 | 284,925.99 | 287,775.25 |
| Labor | 1,122,622.60 | 1,133,848.83 | 1,145,187.31 | 1,156,639.19 | 1,168,205.58 |
| Production OT | 80,600.44 | 81,406.44 | 82,220.51 | 83,042.71 | 83,873.14 |
| Employee Benefit Expenses | 206,933.64 | 209,002.98 | 211,093.01 | 213,203.94 | 215,335.98 |
| Total Operating Expenses | 1,686,703.04 | 1,703,570.07 | 1,720,605.77 | 1,737,811.83 | 1,755,189.95 |
| **General Expenses** | | | | | |
| Postage | 213.60 | 215.74 | 217.89 | 220.07 | 222.27 |
| Office Supplies | 6,763.20 | 6,830.83 | 6,899.14 | 6,968.13 | 7,037.81 |
| Lab Supplies | 60,889.72 | 61,498.62 | 62,113.60 | 62,734.74 | 63,362.09 |
| Meals | 3,617.88 | 3,654.06 | 3,690.60 | 3,727.51 | 3,764.78 |
| Travel Expense | 2,786.20 | 2,814.06 | 2,842.20 | 2,870.62 | 2,899.33 |
| Entertainment | 1,368.64 | 1,382.33 | 1,396.15 | 1,410.11 | 1,424.21 |
| Payroll Administrative Expenses | 15,381.72 | 15,535.54 | 15,690.89 | 15,847.80 | 16,006.28 |
| Employee Uniforms | 25,874.00 | 26,132.74 | 26,394.07 | 26,658.01 | 26,924.59 |
| Communication Expense | 14,972.68 | 15,122.41 | 15,273.63 | 15,426.37 | 15,580.63 |
| Legal Services | 6,000.00 | 6,060.00 | 6,120.60 | 6,181.81 | 6,243.62 |
| IT Expenses | 47,130.68 | 47,601.99 | 48,078.01 | 48,558.79 | 49,044.37 |
| Professional Fees Other | 6,343.96 | 6,407.40 | 6,471.47 | 6,536.19 | 6,601.55 |
| Dues & Subscriptions | 15,355.44 | 15,508.99 | 15,664.08 | 15,820.73 | 15,978.93 |
| Service Charge & Fees | 4,821.56 | 4,869.78 | 4,918.47 | 4,967.66 | 5,017.33 |
| Total General Expenses | 211,519.28 | 213,634.47 | 215,770.82 | 217,928.53 | 220,107.81 |
| **Facility Expenses** | | | | | |
| Waste Water | | | | | |
| Truck Fuel | 11,727.32 | 11,844.59 | 11,963.04 | 12,082.67 | 12,203.50 |
| Sanitation Supplies | 82,422.74 | 83,246.96 | 84,079.43 | 84,920.23 | 85,769.43 |
| Maintenance Supplies | 7,365.56 | 7,439.21 | 7,513.60 | 7,588.74 | 7,664.63 |
| Building Repairs & Maintenance | 5,844.83 | 5,903.28 | 5,962.31 | 6,021.93 | 6,082.15 |
| Ground Maintenance | 1,492.17 | 1,507.09 | 1,522.16 | 1,537.39 | 1,552.76 |
| Garbage Service | 81,362.78 | 82,176.40 | 82,998.17 | 83,828.15 | 84,666.43 |
| Facility Equipment Rental | 7,500.00 | 7,575.00 | 7,650.75 | 7,727.26 | 7,804.53 |
| Facility Equipment Repairs | 31,771.76 | 32,089.48 | 32,410.38 | 32,734.48 | 33,061.83 |
| Facility Equipment Leases | - | - | - | - | - |
| Vehicle Certifications | 9,949.68 | 10,049.17 | 10,149.66 | 10,251.16 | 10,353.67 |
| Reefer Trailer Rental | 18,000.00 | 18,540.00 | 19,096.20 | 19,669.09 | 20,259.16 |
| Total Facility Expenses | 257,436.83 | 260,371.20 | 263,345.71 | 266,361.09 | 269,418.08 |
| Electric | 695,453.30 | 702,407.83 | 709,431.91 | 716,526.23 | 723,691.49 |
| Gas | 201,924.14 | 203,943.38 | 205,982.81 | 208,042.64 | 210,123.07 |
| Water | 76,888.06 | 77,656.94 | 78,433.51 | 79,217.85 | 80,010.03 |
| Vehicle Insurance | 4,854.12 | 4,902.66 | 4,951.69 | 5,001.20 | 5,051.22 |
| Umbrella Insurance | 15,922.84 | 16,082.07 | 16,242.89 | 16,405.32 | 16,569.37 |
| Commercial Insurance | 59,520.72 | 60,115.93 | 60,717.09 | 61,324.26 | 61,937.50 |
| Excess Liabilitiy Insurance | 9,664.00 | 9,760.64 | 9,858.25 | 9,956.83 | 10,056.40 |
| Recall Insurance | 47,569.48 | 48,045.17 | 48,525.63 | 49,010.88 | 49,500.99 |
| Crime Insurance | 5,227.56 | 5,279.84 | 5,332.63 | 5,385.96 | 5,439.82 |
| Total Expenses | 3,272,683.36 | 3,305,770.20 | 3,339,198.70 | 3,372,972.61 | 3,407,095.72 |
| Cash Flow From Operations | 143,050.58 | 144,121.03 | 145,191.49 | 146,261.49 | 147,330.72 |
| Reserve for Working Capital | | | | | |
| Secured Creditors | 84,000.00 | 84,000.00 | 84,000.00 | 84,000.00 | 84,000.00 |
| Priority Claims | 35,501.04 | 35,501.04 | 35,501.04 | 35,501.04 | 35,501.04 |
| Cash Flow Available for Unsecured Creditors | 23,549.54 | 24,620.04 | 25,690.45 | 26,760.45 | 27,829.68 |

Monthly 1,962.46

## Exhibit B

|  | 2027 |
|---|---|
| **Sales** | |
| Product Sales | 6,354,352.94 |
| Total Sales | 6,354,352.94 |
| | |
| **Freight & Discounts** | |
| Billable Freight | 92,400.00 |
| Total Freight & Discounts | 92,400.00 |
| | |
| **Cost of Goods Sold** | |
| Production Costs | 2,846,219.00 |
| Total Cost of Goods Sold | 2,846,219.00 |
| | |
| **Gross Profit** | 3,415,733.94 |
| | |
| **Operating Expenses** | |
| Management Salaries | 276,546.36 |
| Labor | 1,122,622.60 |
| Production OT | 80,600.44 |
| Employee Benefit Expenses | 206,933.64 |
| Total Operating Expenses | 1,686,703.04 |
| | |
| **General Expenses** | |
| Postage | 213.60 |
| Office Supplies | 6,763.20 |
| Lab Supplies | 60,889.72 |
| Meals | 3,617.88 |
| Travel Expense | 2,786.20 |
| Entertainment | 1,368.64 |
| Payroll Administrative Expenses | 15,381.72 |
| Employee Uniforms | 25,874.00 |
| Communication Expense | 14,972.68 |
| Legal Services | 6,000.00 |
| IT Expenses | 47,130.68 |
| Professional Fees Other | 6,343.96 |
| Dues & Subscriptions | 15,355.44 |
| Service Charge & Fees | 4,821.56 |
| Total General Expenses | 211,519.28 |
| | |
| **Facility Expenses** | |
| Waste Water | |
| Truck Fuel | 11,727.32 |
| Sanitation Supplies | 82,422.74 |
| Maintenance Supplies | 7,365.56 |
| Building Repairs & Maintenance | 5,844.83 |
| Ground Maintenance | 1,492.17 |
| Garbage Service | 81,362.78 |
| Facility Equipment Rental | 7,500.00 |
| Facility Equipment Repairs | 31,771.76 |
| Facility Equipment Leases | - |
| Vehicle Certifications | 9,949.68 |
| Reefer Trailer Rental | 18,000.00 |
| Total Facility Expenses | 257,436.83 |
| | |
| Electric | 695,453.30 |
| Gas | 201,924.14 |
| Water | 76,888.06 |
| Vehicle Insurance | 4,854.12 |
| Umbrella Insurance | 15,922.84 |
| Commercial Insurance | 59,520.72 |
| Excess Liabilitiy Insurance | 9,664.00 |
| Recall Insurance | 47,569.48 |
| Crime Insurance | 5,227.56 |
| | |
| **Total Expenses** | 3,272,683.36 |
| | |
| | |
| Cash Flow From Operations | 143,050.58 |
| | |
| Reserve for Working Capital | |
| | |
| Secured Creditors | 84,000.00 |
| | |
| Priority Claims | 35,501.04 |
| | |
| Cash Flow Available for Unsecured Creditors | 23,549.54 |
| | |
| Monthly | 1,962.46 |

## Exhibit B

|  | 2028 |
|---|---|
| Sales |  |
| Product Sales | 6,417,896.47 |
| Total Sales | 6,417,896.47 |
|  |  |
| Freight & Discounts |  |
| Billable Freight | 93,324.00 |
| Total Freight & Discounts | 93,324.00 |
|  |  |
| Cost of Goods Sold |  |
| Production Costs | 2,874,681.19 |
|  |  |
| Total Cost of Goods Sold | 2,874,681.19 |
|  |  |
| Gross Profit | 3,449,891.28 |
|  |  |
| Operating Expenses |  |
| Management Salaries | 279,311.82 |
| Labor | 1,133,848.83 |
| Production OT | 81,406.44 |
| Employee Benefit Expenses | 209,002.98 |
| Total Operating Expenses | 1,703,570.07 |
|  |  |
| General Expenses |  |
| Postage | 215.74 |
| Office Supplies | 6,830.83 |
| Lab Supplies | 61,498.62 |
| Meals | 3,654.06 |
| Travel Expense | 2,814.06 |
| Entertainment | 1,382.33 |
| Payroll Administrative Expenses | 15,535.54 |
| Employee Uniforms | 26,132.74 |
| Communication Expense | 15,122.41 |
| Legal Services | 6,060.00 |
| IT Expenses | 47,601.99 |
| Professional Fees Other | 6,407.40 |
| Dues & Subscriptions | 15,508.99 |
| Service Charge & Fees | 4,869.78 |
| Total General Expenses | 213,634.47 |
|  |  |
| Facility Expenses |  |
| Waste Water |  |
| Truck Fuel | 11,844.59 |
| Sanitation Supplies | 83,246.96 |
| Maintenance Supplies | 7,439.21 |
| Building Repairs & Maintenance | 5,903.28 |
| Ground Maintenance | 1,507.09 |
| Garbage Service | 82,176.40 |
| Facility Equipment Rental | 7,575.00 |
| Facility Equipment Repairs | 32,089.48 |
| Facility Equipment Leases | - |
| Vehicle Certifications | 10,049.17 |
| Reefer Trailer Rental | 18,540.00 |
| Total Facility Expenses | 260,371.20 |
|  |  |
| Electric | 702,407.83 |
| Gas | 203,943.38 |
| Water | 77,656.94 |
| Vehicle Insurance | 4,902.66 |
| Umbrella Insurance | 16,082.07 |
| Commercial Insurance | 60,115.93 |
| Excess Liabilitiy Insurance | 9,760.64 |
| Recall Insurance | 48,045.17 |
| Crime Insurance | 5,279.84 |
|  |  |
| Total Expenses | 3,305,770.20 |
|  |  |
|  |  |
| Cash Flow From Operations | 144,121.08 |
|  |  |
| Reserve for Working Capital |  |
|  |  |
| Secured Creditors | 84,000.00 |
|  |  |
| Priority Claims | 35,501.04 |
|  |  |
| Cash Flow Available for Unsecured Creditors | 24,620.04 |

Monthly

## Exhibit B

|  | 2029 |
|---|---|
| **Sales** | |
| Product Sales | 6,482,075.44 |
| Total Sales | 6,482,075.44 |
| | |
| **Freight & Discounts** | |
| Billable Freight | 94,257.24 |
| Total Freight & Discounts | 94,257.24 |
| | |
| **Cost of Goods Sold** | |
| Production Costs | 2,903,428.00 |
| Total Cost of Goods Sold | 2,903,428.00 |
| | |
| **Gross Profit** | 3,484,390.19 |
| | |
| **Operating Expenses** | |
| Management Salaries | 282,104.94 |
| Labor | 1,145,187.31 |
| Production OT | 82,220.51 |
| Employee Benefit Expenses | 211,093.01 |
| Total Operating Expenses | 1,720,605.77 |
| | |
| **General Expenses** | |
| Postage | 217.89 |
| Office Supplies | 6,899.14 |
| Lab Supplies | 62,113.60 |
| Meals | 3,690.60 |
| Travel Expense | 2,842.20 |
| Entertainment | 1,396.15 |
| Payroll Administrative Expenses | 15,690.89 |
| Employee Uniforms | 26,394.07 |
| Communication Expense | 15,273.63 |
| Legal Services | 6,120.60 |
| IT Expenses | 48,078.01 |
| Professional Fees Other | 6,471.47 |
| Dues & Subscriptions | 15,664.08 |
| Service Charge & Fees | 4,918.47 |
| Total General Expenses | 215,770.82 |
| | |
| **Facility Expenses** | |
| Waste Water | |
| Truck Fuel | 11,963.04 |
| Sanitation Supplies | 84,079.43 |
| Maintenance Supplies | 7,513.60 |
| Building Repairs & Maintenance | 5,962.31 |
| Ground Maintenance | 1,522.16 |
| Garbage Service | 82,998.17 |
| Facility Equipment Rental | 7,650.75 |
| Facility Equipment Repairs | 32,410.38 |
| Facility Equipment Leases | - |
| Vehicle Certifications | 10,149.66 |
| Reefer Trailer Rental | 19,096.20 |
| Total Facility Expenses | 263,345.71 |
| | |
| Electric | 709,431.91 |
| Gas | 205,982.81 |
| Water | 78,433.51 |
| Vehicle Insurance | 4,951.69 |
| Umbrella Insurance | 16,242.89 |
| Commercial Insurance | 60,717.09 |
| Excess Liabilitiy Insurance | 9,858.25 |
| Recall Insurance | 48,525.63 |
| Crime Insurance | 5,332.63 |
| | |
| **Total Expenses** | 3,339,198.70 |
| | |
| **Cash Flow From Operations** | 145,191.49 |
| | |
| Reserve for Working Capital | |
| | |
| Secured Creditors | 84,000.00 |
| | |
| Priority Claims | 35,501.04 |
| | |
| Cash Flow Available for Unsecured Creditors | 25,690.45 |

Monthly

## Exhibit B

|  | 2030 |
|---|---|
| **Sales** | |
| Product Sales | 6,546,896.19 |
| Total Sales | 6,546,896.19 |
| | |
| **Freight & Discounts** | |
| Billable Freight | 95,199.81 |
| Total Freight & Discounts | 95,199.81 |
| | |
| **Cost of Goods Sold** | |
| Production Costs | 2,932,462.28 |
| Total Cost of Goods Sold | 2,932,462.28 |
| | |
| Gross Profit | 3,519,234.10 |
| | |
| **Operating Expenses** | |
| Management Salaries | 284,925.99 |
| Labor | 1,156,639.19 |
| Production OT | 83,042.71 |
| Employee Benefit Expenses | 213,203.94 |
| Total Operating Expenses | 1,737,811.83 |
| | |
| **General Expenses** | |
| Postage | 220.07 |
| Office Supplies | 6,968.13 |
| Lab Supplies | 62,734.74 |
| Meals | 3,727.51 |
| Travel Expense | 2,870.62 |
| Entertainment | 1,410.11 |
| Payroll Administrative Expenses | 15,847.80 |
| Employee Uniforms | 26,658.01 |
| Communication Expense | 15,426.37 |
| Legal Services | 6,181.81 |
| IT Expenses | 48,558.79 |
| Professional Fees Other | 6,536.19 |
| Dues & Subscriptions | 15,820.73 |
| Service Charge & Fees | 4,967.66 |
| Total General Expenses | 217,928.53 |
| | |
| **Facility Expenses** | |
| Waste Water | |
| Truck Fuel | 12,082.67 |
| Sanitation Supplies | 84,920.23 |
| Maintenance Supplies | 7,588.74 |
| Building Repairs & Maintenance | 6,021.93 |
| Ground Maintenance | 1,537.39 |
| Garbage Service | 83,828.15 |
| Facility Equipment Rental | 7,727.26 |
| Facility Equipment Repairs | 32,734.48 |
| Facility Equipment Leases | . |
| Vehicle Certifications | 10,251.16 |
| Reefer Trailer Rental | 19,669.09 |
| Total Facility Expenses | 266,361.09 |
| | |
| Electric | 716,526.23 |
| Gas | 208,042.64 |
| Water | 79,217.85 |
| Vehicle Insurance | 5,001.20 |
| Umbrella Insurance | 16,405.32 |
| Commercial Insurance | 61,324.26 |
| Excess Liability Insurance | 9,956.83 |
| Recall Insurance | 49,010.88 |
| Crime Insurance | 5,385.96 |
| | |
| Total Expenses | 3,372,972.61 |
| | |
| | |
| Cash Flow From Operations | 146,261.49 |
| | |
| Reserve for Working Capital | |
| | |
| Secured Creditors | 84,000.00 |
| | |
| Priority Claims | 35,501.04 |
| | |
| Cash Flow Available for Unsecured Creditors | 26,760.45 |

Monthly

## Exhibit B

|  | 2031 |
|---|---|
| **Sales** | |
| Product Sales | 6,612,365.15 |
| Total Sales | 6,612,365.15 |
| | |
| **Freight & Discounts** | |
| Billable Freight | 96,151.81 |
| Total Freight & Discounts | 96,151.81 |
| | |
| **Cost of Goods Sold** | |
| Production Costs | 2,961,786.90 |
| | |
| Total Cost of Goods Sold | 2,961,786.90 |
| | |
| Gross Profit | 3,554,426.44 |
| | |
| **Operating Expenses** | |
| Management Salaries | 287,775.25 |
| Labor | 1,168,205.58 |
| Production OT | 83,873.14 |
| Employee Benefit Expenses | 215,335.98 |
| Total Operating Expenses | 1,755,189.95 |
| | |
| **General Expenses** | |
| Postage | 222.27 |
| Office Supplies | 7,037.81 |
| Lab Supplies | 63,362.09 |
| Meals | 3,764.78 |
| Travel Expense | 2,899.33 |
| Entertainment | 1,424.21 |
| Payroll Administrative Expenses | 16,006.28 |
| Employee Uniforms | 26,924.59 |
| Communication Expense | 15,580.63 |
| Legal Services | 6,243.62 |
| IT Expenses | 49,044.37 |
| Professional Fees Other | 6,601.55 |
| Dues & Subscriptions | 15,978.93 |
| Service Charge & Fees | 5,017.33 |
| Total General Expenses | 220,107.81 |
| | |
| **Facility Expenses** | |
| Waste Water | |
| Truck Fuel | 12,203.50 |
| Sanitation Supplies | 85,769.43 |
| Maintenance Supplies | 7,664.63 |
| Building Repairs & Maintenance | 6,082.15 |
| Ground Maintenance | 1,552.76 |
| Garbage Service | 84,666.43 |
| Facility Equipment Rental | 7,804.53 |
| Facility Equipment Repairs | 33,061.83 |
| Facility Equipment Leases | - |
| Vehicle Certifications | 10,353.67 |
| Reefer Trailer Rental | 20,259.16 |
| Total Facility Expenses | 269,418.08 |
| | |
| Electric | 723,691.49 |
| Gas | 210,123.07 |
| Water | 80,010.03 |
| Vehicle Insurance | 5,051.22 |
| Umbrella Insurance | 16,569.37 |
| Commercial Insurance | 61,937.50 |
| Excess Liabilitiy Insurance | 10,056.40 |
| Recall Insurance | 49,500.99 |
| Crime Insurance | 5,439.82 |
| | |
| Total Expenses | 3,407,095.72 |
| | |
| | |
| Cash Flow From Operations | 147,330.72 |
| | |
| Reserve for Working Capital | |
| | |
| Secured Creditors | 84,000.00 |
| | |
| Priority Claims | 35,501.04 |
| | |
| Cash Flow Available for Unsecured Creditors | 27,829.68 |

Monthly