UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ORIGIN FOOD GROUP, LLC | ) | Case No. 25-50268 |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**THE HUNTINGTON NATIONAL BANK'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

The Huntington National Bank ("Huntington"), a secured creditor in this case, objects to confirmation of Origin Food Group, LLC's (the "Debtor") Chapter 11 Plan of Reorganization (the "Plan"). Huntington rejects the Plan and requests that this Objection be treated as its rejection of the Plan to the fullest extent permitted. In support, Huntington states as follows:

1. On August 20, 2025 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and is operating as debtor-in-possession.

2. On or about August 4, 2020, the Debtor entered into a Master Equipment Lease Agreement, together with all modifications and addenda thereto, with Jules and Associates, Inc., which recited terms by which the Debtor would lease certain equipment described in lease schedules.

3. Pursuant to that Master Equipment Lease Agreement, the Debtor executed a lease schedule ("Schedule 501") by which it financed one (1) Steam Generator System for Thermopoint (80KW) (Boiler 480V3-PH/Autoflush Skid V Tank), including all attachments and accessories thereto (the "Steam Generator").

4. Huntington perfected its interest in the Steam Generator by filing a UCC Financing Statement with the North Carolina Secretary of State, file no. 20220056104C.

5. On April 22, 2022, Jules and Associates assigned all right, title, and interest in the Master Equipment Lease Agreement and applicable lease schedule to Huntington.

6. On October 27, 2025, Huntington filed Proof of Claim No. 32-1 in the amount of $3,543.02 ("Claim 32") representing the indebtedness for the financed purchase of the Steam Generator.

7. Pursuant to the same Master Equipment Lease Agreement, the Debtor executed another lease schedule ("Schedule 502") by which it financed one (1) New Surge Drum with Horizontal Vessel (48-inch diameter), Level Column with Sight Eyes, Level Probe, Relief Valves and Isolation Valves, and one (1) Trufill Fresh 1.5-inch Turbine Meter, Fitment Tooling, 1.5-inch E&H Mass Flow Meter, 1.5-inch E&H Magnetic Flow Meter, 1.5-inch Dampening Valve, Dairy Valve, and Spare Parts Kit, including all attachments and accessories thereto (the "Surge Drum" and together with the Steam Generator, the "Equipment").

8. On May 12, 2023, Jules and Associates assigned all right, title, and interest in the Master Equipment Lease Agreement and applicable lease schedule to Huntington.

9. Huntington perfected its interest in the Surge Drum by filing a UCC Financing Statement with the North Carolina Secretary of State, file no. 20230060847C.

10. Also on October 27, 2025, Huntington filed Proof of Claim No. 33-1 in the amount of $184,393.99 ("Claim 33") representing the indebtedness for the financed purchase of the Surge Drum.

11. On June 10, 2026, the Debtor filed the Plan as Document No. 226.

12. The Plan places Huntington in Class 8 and purports to classify Huntington as the holder of a single "Allowed Secured Claim" with a $10,000.00 "set amount" for both items of Equipment.

13. The Plan then proposes a $10,000.00 secured claim for the Steam Generator, payable at $143.70 per month for eighty-four months with interest at 5.5%, and only $200.00 for the Surge Drum Equipment, payable by the Claims Deadline.

14. The proposed treatment does not account for the separate Finance Agreements, does not provide for the full allowed amount of either Claim, and identifies no valuation evidence supporting either figure.

15. The Plan further provides that post-Effective Date surrender will fully satisfy all claims, while allowing a deficiency only if the Equipment is retained. It also purports to serve as a claim objection and motion to value and contains lien-cancellation language.

16. Huntington rejects and does not consent to the valuation, interest rate, improper modification of its secured claims, impairment or cancellation of its liens and contract rights, full-satisfaction surrender treatment, or any release or waiver of remedies.

## OBJECTIONS TO CONFIRMATION

17. The Plan improperly identifies Huntington's Claims, attempts to cram-down Huntington's Claims far beyond any reasonable value, impermissibly applies an interest rate to the secured portion of Huntington's claims that is below the prime rate and does not account for the risk of non-payment, attempts to amortize the terms of Huntington's Claims to the extent that they are even further devalued, contains impermissible cancellation and surrender provisions, is not feasible, and violates the absolute priority rule.

### I. THE PLAN IMPROPERLY COMBINES TWO DISTINCT FINANCE AGREEMENTS AND SECURED CLAIMS

18. The Plan does not identify any legal or factual basis for collapsing two distinct Finance Agreements and two separately filed secured claims into a single Class 8 claim. The Plan must separately identify and treat Claim 32 and Claim 33.

19. The treatment is internally irreconcilable. Class 8 is "set" at $10,000.00 for all Equipment, yet the Plan separately values the Steam Generator at $10,000.00 and the Surge Drum Equipment at $200.00. It states different aggregate values and fails to specify the allowed secured

amount, unsecured deficiency amount, payment obligation, and treatment applicable to each Finance Agreement and each Claim.

20. Separate finance agreements involving different collateral, claim amounts, arrearages, maturity terms, and remedies cannot be administered as one synthetic claim merely because Huntington holds both. The proposed classification obscures the treatment of each allowed claim and fails to provide a clear and lawful means for implementation under 11 U.S.C. § 1123(a)(5).

## II. **<u>THE PROPOSED § 506(a) CRAMDOWN VALUES ARE UNSUPPORTABLE AND ARE NOT REMOTELY REFLECTIVE OF ACTUAL VALUE</u>**

21. Notwithstanding the previously discussed internal inconsistency, the proposed plan seems to value the Steam Generator at $10,000.00 and the Surge Drum value at $200.00.

22. The claim representing the indebtedness for the Steam Generator is in the amount of $3,543.02.

23. The proposed value of the Surge Drum fails under 11 U.S.C. §§ 506(a) and 1129(b)(2)(A).

24. Upon information and belief, the value of the Surge Drum is no less than $87,500.00.

25. Huntington disputes the value of the Surge Drum and requests an evidentiary determination based on the Equipment’s condition, location, configuration, continued use, and appropriate market evidence.

## III. **<u>THE PLAN IS NOT FAIR AND EQUITABLE PURSUANT TO 11 U.S.C. § 1129(b)(2)(A)(i)</u>**

26. Section 1129(b)(2)(A)(i)(II) requires that Huntington’s treatment be fair and equitable with respect to each class. For classes of secured claims, the plan must provide: (I) that the holders of such claims retain the liens securing such claims, whether the property subject to

such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

27. Section 1129(b) of the Bankruptcy Code provides no guidance for calculating the cramdown interest rate required to be paid to confirm a plan of reorganization over a dissenting class of secured claims. The plurality in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), resolved a similar issue with respect to the interest rate required to be paid to an objecting secured creditor in the Chapter 13 context. The lower courts had previously used four different approaches— "the formula rate, the coerced loan rate, the presumptive contract rate, or the cost of funds rate[.]" *Id*. at 473, 124 S.Ct. 1951. The Till plurality rejected the coerced loan, presumptive contract and cost of funds rates, and held that the formula approach should be used to determine the interest rate required to be paid on secured claims in Chapter 13 cases. *Id*. at 477–80, 124 S.Ct. 1951. But, as the Court noted, "[w]hen picking a cramdown rate in a Chapter 11 case, it might make sense to ask what rate an efficient market would produce." *Id*. at 477 n. 14, 124 S.Ct. 1951. The term "efficient market" was not defined in Till and neither case offers much guidance in determining how to ascertain the efficient market rate, nor ... suggest[s] whether the rate may vary based on loan criteria," but most courts, absent specific market conditions that might

indicate a troubled market, apply the *Till* rate to secured claims under Chapter 11 of the Bankruptcy Code. *Brice Road Developments*, 392 B.R. at 280 (internal quotation marks and citation omitted).

28. Here, the Plan proposes a fixed interest rate of five and one-half percent (5.5%) over the term. The current market interest rate is at the very least 2.75% higher than what Debtor has proposed, and that does not account for the risk of non-payment by Debtor. As such and under *Till*, the Claim should accrue interest of at least 9.5% over the term outlined in the Plan.

29. Further, the eighty-four-month repayment term further compounds the inadequacy of the proposed 5.5% interest rate. A seven-year repayment period on specialized commercial equipment materially increases Huntington's risk of nonpayment, depreciation, deterioration, loss, and obsolescence. The Plan provides no evidence that the Equipment will retain sufficient value over the term, no adequate protection against depreciation, and no market evidence supporting a 5.5% rate for a seven-year forced extension of credit. Accordingly, the Plan fails to provide Huntington with deferred cash payments having a value, as of the Effective Date, of at least the value of its interest in the Equipment.

## IV. SURRENDER AND CANCELLATION PROVISIONS ARE IMPERMISSIBLE

30. The Plan imposes full-satisfaction surrender without determining the amount or value of the returned Equipment, the remaining indebtedness, or any resulting deficiency.

31. Under the proposed plan, the Debtor could use specialized Equipment after confirmation, then surrender it at an unspecified time and extinguish the secured and unsecured balance regardless of depreciation, damage, missing components, sale expenses, or disposition proceeds.

32. This shifts all post-confirmation collateral risk to Huntington and is not fair and equitable. It also fails to provide Huntington with the indubitable equivalent of its claims under 11 U.S.C. § 1129(b)(2)(A)(iii), because the Plan substitutes an open-ended surrender-and-

cancellation mechanism for payment, valuation, lien retention, or any other treatment that would unquestionably preserve the value of Huntington's secured claims.

33. A "dirt-for-debt" style cramdown may satisfy § 1129(b)(2)(A)(iii) only if the creditor receives property or treatment that is the unquestionable equivalent of its secured claim. The Plan does not do so. Instead, the Plan permits the Debtor to return used Equipment at some later date and deem Huntington's claims satisfied without fixing value, preserving deficiency rights, accounting for post-confirmation depreciation or disposition costs, or ensuring that the surrendered collateral will equal the allowed amount of Huntington's secured claims. That treatment is not the indubitable equivalent of Huntington's collateral rights or claims and bars cramdown under § 1129(b)(2)(A)(iii).

34. The Class 8 lien-cancellation language is overbroad and even refers to the "holder of Class 1." Confirmation cannot cancel Huntington's perfected security interests, assignments, contract rights, or other collateral rights through a defective cross-reference and boilerplate. Huntington must retain its liens until the applicable allowed secured claim is paid in full or the collateral is lawfully surrendered and disposed of, with all deficiency rights preserved.

## V. <u>THE PLAN IS NOT FEASIBLE</u>

35. Section 1129(a)(11) requires a plan to be feasible and section 1123(a)(5) requires adequate means for implementation.

36. The projections and payment structure do not account for the correct allowed amounts of Claims 32 and 33, the contractual obligations necessary to protect the collateral, or properly determined secured and unsecured deficiency claims. Payments begin by reference to a Claims Deadline rather than a fixed and readily ascertainable date.

37. If Claim 33 produces a substantial unsecured deficiency claim, Class 13 distributions materially change. The Plan does not demonstrate sufficient cash flow to make the

required secured payments, satisfy the arrearage, maintain and insure the Equipment, fund operations, and satisfy all other Plan obligations.

## VI. THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE

38. Section 1129(b)(2)(B)(ii), commonly referred to as the "absolute priority rule," provides: "the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." The dissenting classes of unsecured creditors must be paid in full before any junior class, including equity holders, can receive or retain any property under a reorganization plan.

39. The "new value" exception to the absolute priority rule allows "existing equity holders to retain (i.e., buy back) their ownership interests in the reorganized debtor over the objection of any senior dissenting unsecured creditor class that is not being paid in full if the equity holders make a new capital contribution to the debtor that meets certain criteria."

40. The Plan, at minimum, fails to demonstrate compliance with the absolute priority rule. Class 13 is impaired and is projected to receive only a small pro rata distribution, while the Debtor's insider retains the equity interests in the Reorganized Debtor. To the extent Huntington's claims are bifurcated, Huntington will hold a substantial unsecured deficiency claim in Class 13 and is entitled to object to confirmation on that basis. If Class 13 rejects the Plan and is not paid in full, the Plan may not be confirmed over that rejection while junior equity retains property on account of its interest unless the Debtor establishes a legally sufficient new-value exception or otherwise satisfies Section 1129(b)(2)(B)(ii).

41. This exception was derived from the Supreme Court's discussion on a stockholder's participation in the plan of reorganization of a debtor: "the stockholder's participation must be based on a contribution in money's worth, reasonably equivalent in view of all of the circumstances to the participation of the stockholder." *Case v. Los Angeles Lumber Products Co*., 308 U.S. 106, 121¬-22 (1939).

42. The Plan does not satisfy that burden. The alleged new-value contribution is not adequately defined, supported, or tested. The Plan states that the insider will contribute at least $100,000 and may do so by "leveraging equity in an Affiliate," but it does not identify the source, timing, form, availability, lien status, or actual value of that contribution. Nor does the Plan establish that the contribution is substantial, necessary to reorganization, reasonably equivalent to the retained equity interest, or the product of any market test. The proposed waiver of insider or affiliate claims likewise does not establish compliance with the absolute priority rule absent evidence that those claims are valid, valuable, and distributable in a manner that creates actual value for creditors.

## VIII. THE PLAN WAS NOT PROPOSED IN GOOD FAITH

43. Section 1129(a)(3) requires good faith. The Plan uses internally inconsistent language to collapse two distinct Finance Agreements and secured claims, adjudicate claim amounts and collateral values, impose unsupported values, cancel lien and contract rights, and create a one-way surrender option.

44. These defects prevent the Court and Huntington from determining what is assumed, what claims are allowed, what interests survive, and what payments are required. The Plan fails sections 1129(a)(1), (2), (3), (7), and (11), and cannot be crammed down under section 1129(b).

## RESERVATION OF RIGHTS

45. Huntington reserves the right to supplement this Objection, present valuation and other evidence, challenge any amended plan or confirmation order, object to disclosure and solicitation defects, assert secured, unsecured-deficiency, arrearage, default-interest, fees, expenses, adequate-protection, setoff, recoupment, and other rights, and exercise all contractual and nonbankruptcy remedies. Nothing herein is an election of remedies, consent to valuation or impairment, waiver of lien or contract rights, or acceptance of treatment.

WHEREFORE, Huntington respectfully requests that the Court deny confirmation and grant such other relief as is just and proper.

Dated: August 18, 2026

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Eudora F. S. Arthur
Eudora F. S. Arthur
N.C. State Bar No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2178
Email: dorie.arthur@wbd-us.com
*Attorneys for The Huntington National Bank*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2026, the foregoing was filed using the Court's CM/ECF system, which will automatically provide electronic service to all counsel and parties registered to receive electronic notice in this case.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Eudora F. S. Arthur
Eudora F. S. Arthur
N.C. State Bar No. 59854
*Attorneys for The Huntington National Bank*